GEORGE SAMPSON & others *vs.* SECURITY INSURANCE COMPANY.

Suffolk. March 10. — May 16, 1882.

Insurance against fire was effected on goods contained in the chambers of A. in brick, stone and iron building No. 117 Franklin Street. A. was the proprietor of a printing establishment and occupied chambers in buildings owned by four different persons, all of which fronted on Federal Street. The entrance to the upper stories of one of them was at 117 Franklin Street, and the other three had entrances to their upper stories on Federal Street. The one having its entrance on Franklin Street and the two others adjoining were built at the same time, and were known as the Franklin Buildings. There were party-walls between them. The fourth building was put up soon after, with distinct walls and with floors at a different level, and was known as the M. Building. Doors were cut through the walls of all the buildings, so that A.'s chambers were connected with each other, and the public entrance to all of them was at 117 Franklin Street, though they were accessible by the staircases leading from Federal Street. At the time of a loss by fire, some of the goods destroyed were in one of the Franklin Buildings, the entrance to the staircase of which was on Federal Street; and other goods destroyed were in the M. Building. *Held,* that the former were covered by the insurance, and that the latter were not.

CONTRACT on a policy of insurance against loss by fire "on type and other printing materials, paper and sheets in process of printing, and printed and manuscript copy of their various directories and other publications, contained in the chambers of Rand, Avery and Company, in stone, brick and iron building No. 117 Franklin Street, Boston." Trial in the Superior Court, before *Colburn,* J., who reported the case for the determination of this court, in substance as follows:

The execution of the policy, and a loss by fire of like goods greater in amount than the sum named therein, was admitted; and the sole question was, whether the loss, which it was

admitted the plaintiffs had sustained, was covered by the de-scriptive terms of this policy.

It appeared that, shortly after the great fire in Boston, the owner of the lot of land on the corner of Franklin Street and Federal Street, shown on a plan, a sketch of which is printed in the margin,* and marked John Ritchie, together with the owner of the next lot, marked John Ritchie 2d and Eliza Lewis, and the owner of the next lot, marked John Starrett, constructed buildings upon their several lots, which were erected contemporaneously and under the plans and designs of one architect, presenting in the front on Federal Street the appearance of one entire structure. These buildings were called the Franklin Buildings; and were of stone, brick and iron.

The building on each of said lots was separated from the others by a brick party-wall, and each had separate entrances from the street, and separate stairways to the chambers above the store upon the first story. The John Ritchie building had entrances at Nos. 117, 119, 123, 131 Franklin Street, and 63 and 67 Federal Street; the John Ritchie 2d and Eliza Lewis building, at 69 Federal Street; and the John Starrett building, at 73 and 75 Federal Street. Entrance No. 117 Franklin Street was a stairway leading to the stories above.

About the same time, the owners of the lot of land next adjoining southerly the last-named building on Federal Street improved their lot by the erection of a building differing in plan and appearance in front on Federal Street; and the latter building was not completed until two or three months after the

\* 

Federal Street.

| Franklin Street. | John Ritchie. | John Ritchie 2d and Eliza Lewis. | John Starrett. | Miller Building. |

117

Franklin Buildings were finished, and was called the Miller Building. The construction of this building was separate and under a different architect.

The walls of the building marked John Starrett, and those of that marked Miller, were built up solid, and afterwards a single opening was cut through the same at the fifth story only. This opening was closed by doors of iron on each side, which were kept closed and bolted at night. The access from the chamber on the fifth story of the Miller Building through this opening was by a descending incline, upon which trucks were run from that building to and fro to the other building. The Miller Building was numbered 91 and 93 on Federal Street.

Rand, Avery and Company, who are proprietors of a large printing establishment, had, before the completion of these buildings, contracted for leases of the different buildings constituting the Franklin Buildings, and before its completion also took a lease of all that part of the Miller Building which was above the lower story; and all the premises leased by them were so constructed in building as to be adapted to their uses in the portions occupied by them. In the building which is marked John Ritchie, Rand, Avery and Company occupied a counting-room up one flight of stairs, and other chambers above, in addition to the chambers in the fifth story thereof. Rand, Avery and Company occupied all the chambers of the fifth story in each of the three buildings known as the Franklin Buildings, and they also occupied the front part of the fifth story of the building called the Miller Building.

These chambers were a continuous series of connecting rooms, with a single opening in each partition-wall between the several buildings, closed at night by double iron doors, through and from one to the other of which chambers the work done by the firm for the plaintiffs, who were publishers of directories, passed and repassed in various stages of printing, pressing, &c., preparatory to binding, which was done below in a bindery in the Miller Building, or in one on the floor below in buildings Nos. 69 and 73 Federal Street respectively; and, after the sheets were printed and pressed, they were carried into the fifth story of the Miller Building. At the time of this fire, in December 1879, all the insured property was in the Miller Building, except two

and one half reams of paper, of the value of five dollars, which was in the fifth story of one of the two buildings between the John Ritchie building and the Miller Building.

The public entrance to the counting-room, and to all the chambers of Rand, Avery and Company, was through the door numbered 117 Franklin Street, being the most westerly number on Franklin Street; but there was access to the chambers of Rand, Avery and Company in each building by a staircase on Federal Street.

Egress and ingress could be had from and to the chambers on the fifth story of the Miller Building through a staircase at No. 93 Federal Street, which was used by Rand, Avery and Company's other tenants in the rear part of the fifth story; but the door leading to this staircase from Rand, Avery and Company's chambers in the Miller Building was kept locked, and its use as a means of communication with the street was forbidden by the firm, except in case of fire, and when necessary to go to other rooms having business relations with said firm as binderies. Access to their chambers on the fifth story of the John Ritchie building was also possible through a staircase at 67 Federal Street, and also from the John Starrett building by one at 73 Federal Street; but these staircases were not in public and general use as entrances to Rand, Avery and Company's chambers.

Both the staircases at No. 93 Federal Street and 73 Federal Street were used as a means of communication with the bindery of Messrs. Crowell and Company in the Miller Building below, and the bindery of Messrs. Sanborn and Company in the buildings Nos. 69 and 73 Federal Street, to which not infrequently the printed sheets of books printed by Rand, Avery and Company were transferred to be bound; and it appeared that this was substantially the only use made by Rand, Avery and Company, or persons employed by or dealing with them, of these staircases.

The floors of the Miller Building were not on a level with the corresponding stories of the connecting building. The difference in the fifth story was from two to three feet, and the entrance from one building to the other through the opening in the partition-wall was facilitated by an inclined plane connecting the two floors.

The openings in the partition-walls between the several buildings were not confined to the fifth story, except in the Miller Building, which had no other connection with the Franklin Buildings.

It appeared that the plaintiffs had insured property, with the defendant and with other companies, contained in Sanborn's and Crowell's binderies, which were in chambers of the different buildings above mentioned, describing the several buildings having entrances on Federal Street by their numbers on said Federal Street.

Upon the foregoing evidence, the judge instructed the jury to return a verdict for the defendant. If the instruction was correct, judgment was to be rendered on the verdict; otherwise, the verdict to be set aside, and a new trial ordered.

*A. Russ & D. A. Dorr*, for the plaintiffs.

*R. D. Smith & M. M. Weston*, for the defendant.

DEVENS, J. The property insured was situated "in the chambers of Rand, Avery and Company, in stone, brick and iron building No. 117 Franklin Street, Boston." The defendant contends that the only property insured is that found in those chambers which were in the John Ritchie building, which building formed a part of the Franklin Buildings, which were erected as one structure, and each part of which had entrances on Federal Street, upon the ground that No. 117 Franklin Street was a separate building from those portions of the Franklin Buildings which abutted alone on Federal Street. The words do not require so narrow a construction as this. No. 117 Franklin Street was an entrance only to upper stories, the fifth story of all the structure known as the Franklin Buildings, to which it gave access, being occupied by the plaintiffs for their business. Conceding that the words "chambers of Rand, Avery and Company" are not to be separated from those which follow them, these latter words may well mean that the chambers are situated in the stone, brick and iron building to which an entrance is found at No. 117. There is no necessity for separating the chambers which are in the other portions of the same structure from those in that portion of the Franklin Buildings, because party-walls, for safety or convenience, or to indicate separate ownership, divide the structure, when doors have been made

between the buildings, and the chambers have been used together for different parts of the same business. Upon this part of the case, it seems to us that the learned judge was in error; and that the plaintiff should have been permitted to recover for the small amount of goods of the value of five dollars which were situated in the upper story of the Franklin Buildings at the time of the fire.

Whether the plaintiffs can recover for those goods which were in that portion of the chambers which were in the Miller Building is a more difficult, and to the parties a much more important, matter. The Miller Building was not only separated by partition walls, with independent means of access to Federal Street, but was a building entirely distinct from the Franklin Buildings. It was not built at the same time, nor did it present the same appearance. The levels of floors were different, and it was separated from the Franklin Buildings, not by a partition wall, but by two walls which were separate and independent, belonging respectively to each structure. If the plaintiffs may recover for the property here situated, it would seem that they might also recover for property used in their business in any set of chambers which could be connected with the entrance at No. 117 Franklin Street, provided only they were in a stone, brick and iron building. It is in substance the contention of the plaintiffs, that the operative words are "the chambers of Rand, Avery and Company," and that the only office of the rest of the phrase is to describe them as being reached by or having an access at No. 117 Franklin Street. But the number applies to a building described, and while, as this number is used to indicate an access to chambers in upper stories, it may be applied to all in that structure, it cannot be applied to such in other structures, even if by means of doors made through the walls of such structures access may be gained to them. Were the words " No. 117 Franklin Street " the only words which follow " chambers of Rand, Avery and Company," it might be held that all that was intended was to describe the access to them; but these words are used, not for this purpose, but to describe the access to the " stone, brick and iron building " in which the chambers are. They cannot be rejected or transposed. The rule that words may be rejected where they are clearly inconsistent with the rest of a description,

has no application, as it is entirely possible that the plaintiffs might have covered the property in their chambers in the Franklin Buildings and that in the chambers in the Miller Building by different policies.   The description has no ambiguity, nor is any latent ambiguity developed when we seek to apply it to the facts, although, as thus applied, the property which the plaintiffs had in the Miller Building is not covered.   When the words of a description can be satisfied, to reject a part would be to give a different interpretation to the contract from that which the parties have expressed, and therefore, we must believe, intended.   Admit that we have a clear description when the words are stricken out, we have no right to strike them out if they can be construed where they are found.   The description of the mode of occupation of the premises where the insured property is situate, is of great value; if any inconsistency were found between this and the locality named, there would be much ground for contending that the former should control, but no such inconsistency here appears.

The plaintiffs contend that the case is not distinguishable from *Blake* v. *Exchange Ins. Co.* 12 Gray, 265.   The policy there covered personal property in " the brick building situate on Main Street in C., known as D. & Co.'s car factory."   As thus written, it was held to cover goods in a building erected as a wing against the wall of D. & Co.'s car factory on Main Street, with an opening through the wall usually closed by an iron door, both wing and main building being used for manufacturing cars and known as " D. & Co.'s car factory."   But the wing of a factory, one of whose walls is also that of the factory itself, deemed, used and known as a part of the factory, certainly differs materially from an independent building, although used in connection with another.

A majority of the court are therefore of opinion that the learned judge rightly ruled for the defendant, so far as the property in the Miller Building is concerned.

The result is, that the verdict must be set aside and a new trial ordered, unless the defendant shall consent to a verdict for the plaintiffs in the sum of five dollars.        *Ordered accordingly.*