WESTFIELD CIGAR COMPANY *vs.* INSURANCE COMPANY OF NORTH AMERICA.

SAME *vs.* MERCHANTS' INSURANCE COMPANY.

SAME *vs.* COLUMBIAN FIRE INSURANCE COMPANY OF AMERICA.

SAME *vs.* TEUTONIC INSURANCE COMPANY.

SAME *vs.* RELIANCE INSURANCE COMPANY.

SAME *vs.* CHESHIRE COUNTY MUTUAL FIRE INSURANCE COMPANY.

SAME *vs.* SPRING GARDEN INSURANCE COMPANY.

Hampden.   September 25, 1895. — April 2, 1896.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Fire Insurance — Description of Premises — Unauthorized Change of Number by Owner.*

Insurance against fire was effected by A. on goods "contained in brick block situated Nos. 82–90 W. Street." A. occupied the fifth story over stores numbered 84 to 90 on W. Street, and also the fifth story over a store numbered 80 on the same street, the latter being used as a warehouse. The entire premises occupied by A. were constructed at the same time by the same person. The only entrance to these premises from the street was by a doorway numbered 82 on W. Street. At the top of the stairs were a hallway and a door on the east side leading into A.'s factory, and one on the west side leading into the warehouse. *Held*, in an action upon the policy, that the jury would be warranted in finding that the goods contained in the warehouse were covered by the descriptive clause in the policy.

If the owner of land, without any authority, substitutes another number for the official number of the entrance to the building thereon, this act cannot bind the tenant, in an action by him upon a policy of insurance against loss by fire on property contained in the building described by its changed number.

SEVEN ACTIONS OF CONTRACT, upon policies of insurance against loss by fire on property of the plaintiff in Springfield. The cases were tried together in the Superior Court, before *Hopkins*, J., who, at the defendants' request, directed the jury to return a verdict for the defendant in each case, and reported the cases for the determination of this court. The facts appear in the opinion.

*W. H. McClintock*, (*J. B. Carroll* with him,) for the plaintiff.

*G. D. Robinson*, for the defendants.

LATHROP, J.   These are actions upon seven policies of insurance. In six of the policies the descriptive clause of the property insured was as follows: " On tobacco and cigars, manufactured and in process, and boxes, labels, and supplies, contained in brick block situated Nos. 82–90, Worthington St., Springfield, Mass." In the other policy the descriptive clause was : " On tobacco and cigars manufactured, unmanufactured, and in process, and on boxes, labels, and supplies, contained in brick block situate Nos. 82 to 90 Worthington St.; Springfield, Mass.   On furniture, fixtures, machines, tools, implements, and apparatus, benches, and improvements therein."

The question in controversy at the trial was whether these descriptive clauses covered the tobacco and cigars contained in the warehouse of the plaintiff.   At the trial in the Superior Court, the judge excluded the greater part of the evidence offered by the plaintiff, and ordered verdicts for the defendants ; and the cases are reported for our determination.   By the terms of the report, if there was any evidence upon which the jury might have found for the plaintiff, or if any evidence was excluded which should have been admitted, the cases were to stand for trial ; otherwise, the verdicts were to stand.

It appeared in evidence that the plaintiff occupied the fifth story over stores numbered 84 to 90 on Worthington Street, and also the fifth story over a store numbered 80 on the same street, the latter being used as its warehouse.   The only entrance to these premises from the street was by a doorway numbered 82 on the same street.

If the evidence offered had been admitted, it would have warranted the jury in finding that the numbers mentioned in the policies designated only some of the entrances to a large build-

ing, fronting on Main Street, and extending three hundred feet on Worthington Street, over the principal entrance to which, on Main Street, were the words " Wight Block." The building was owned by one person. It was begun many years ago, and was extended from time to time to the eastward along Worthington Street. In 1888, the land to the west of the present entrance on Worthington Street, numbered 82, was covered with a three story building with a French roof, and east of this was a two story dwelling-house. In 1888, the roof of the three story building was taken off, the front wall was practically all taken down, and was rebuilt, being carried up two stories higher. The east wall had an opening left in it on the fifth story, for a doorway into the room afterwards occupied by the plaintiff, which room the defendants contend is not within the policy. At the same time, a building was put up covering all the land belonging to the owner to the eastward. This new building had no west end wall, but used the east wall of the other building. The entire work was done by one contractor, at the same time, and the front on Worthington Street of the two buildings was substantially the same in appearance.

It appears, therefore, that the entire premises occupied by the plaintiff were constructed at the same time, by the same person. The only way of reaching these premises, except by a freight elevator in the rear of No. 80, was by the stairs, to which entrance was had by the doorway numbered 82. At the top of the stairs were a hallway, and a door on the east side leading into the factory, and one on the west side leading into the warehouse.

The defendants have made a tender of the amount due for the loss occurring in that portion of the premises over numbers 84 to 90, but contest their liability for loss in the warehouse over number 80.

We have no doubt that, if the description in this case had contained no reference to a brick block, it would be plain that the warehouse in question would be properly described as No. 82. It could not be contended that, if a building had two entrances from the street, one to a store on the first floor with one number, and the other with another number to the floors above, an insurance of the contents of the floors above would not properly

be described as of the latter number. And it has been decided by this court that, to some extent at least, floors in other buildings may be properly described by the street number of the building with which they communicate.

The leading case on this point is *Sampson* v. *Security Ins. Co.* 133 Mass. 49. Insurance was there effected on certain property " contained in the chambers of Rand, Avery, and Company, in stone, brick, and iron building No. 117 Franklin Street, Boston." It appeared that the owners of three lots of land, two of the lots fronting on Federal Street, and the third being on the corner of Federal Street and Franklin Street, erected three buildings at the same time, and under the plans and designs of one architect, presenting on Federal Street the appearance of one structure. These buildings were called the Franklin Buildings ; and were of stone, brick and iron. They were separated from one another by brick party walls, and each had separate entrances from the street, and separate stairways to the chambers above the store in the first story. About the same time the owners of a lot of land next adjoining the most southerly of these buildings on Federal Street put up a building on their land, and the latter building was not completed until two or three months after the Franklin Buildings were finished. This was called the Miller Building. The construction of it was separate, and under a different architect. It had walls of its own, and not a party wall between it and the building northerly of it. Rand, Avery, and Company occupied all the chambers of the fifth story in each of the three buildings known as the Franklin Buildings, and also occupied a part of the fifth story of the Miller Building. These chambers were a continuous series of connecting rooms, with a single opening in each partition wall between the several buildings, closed at night by double iron doors. The general access to these chambers was by the entrance No. 117 Franklin Street. A loss by fire occurred to goods in the Miller Building and in one of the Franklin Buildings, which was not the one in which the entrance No. 117 Franklin Street was situated. The case was considered by all the justices, and the court decided unanimously that the defendant was liable for the loss in any of the Franklin Buildings, and, by a majority opinion, held that the defendant was not liable for the loss in the Miller Building.

In answer to the contention that No. 117 Franklin Street was a separate building from those portions of the Franklin Buildings which abutted alone on Federal Street, it was said by Mr. Justice Devens, in delivering the opinion of the court: " The words do not require so narrow a construction as this. No. 117 Franklin Street was an entrance only to upper stories, the fifth story of all the structure known as the Franklin Buildings, to which it gave access, being occupied by the plaintiffs for their business. Conceding that the words ' chambers of Rand, Avery, and Company ' are not to be separated from those which follow them, these latter words may well mean that the chambers are situated in the stone, brick, and iron building to which an entrance is found at No. 117. There is no necessity for separating the chambers which are in the other portions of the same structure from those in that portion of the Franklin Buildings, because party walls, for safety or convenience, or to indicate separate ownership, divide the structure, when doors have been made between the buildings, and the chambers have been used together for different parts of the same business." The Miller Building was considered to be a distinct building, with separate walls, not built at the same time, nor presenting the same appearance.

We know of no reason why the evidence offered should have been excluded. There is nothing in the word " block " which requires us to say, as matter of law, that that part of the building running from the west side of the doorway numbered 80 to the east end of the building was a separate and distinct block by itself. This is a question of fact to be determined by the evidence. The jury would be warranted in finding that it was merely a part of a large block extending to Main Street. To give it the construction contended for by the defendant, and apparently adopted by the court below, that only the premises occupied by the plaintiff over the numbers mentioned were covered by the insurances, would give no effect to the number 82 over the entrance. We do not understand from the exceptions that the upper story over this number was used by the plaintiff except as a hallway, from which access could be had to the factory on the one hand, and to the warehouse on the other. But even if it were otherwise used, it seems to us that the facts show a

stronger case for the plaintiff than was presented in *Sampson* v. *Security Ins. Co., ubi supra.*

There is also another ground on which we are of opinion that the plaintiff is entitled to go to the jury. There was evidence from which the jury might have found that the entrance way now numbered 82 was not its proper number, but that this was the official number of an entrance to the westward of it, the entrance to the plaintiff's premises being officially numbered 84; and that these numbers were changed in 1890 by the owner of the land, without any authority; and that the store to the westward, and the entrance way beyond that, over both of which, in the fifth story, was the warehouse of the plaintiff, were known to insurers, and were so put down in their rate-book, as numbers 82 and 84, and that the agents of the insurers, when they insured the plaintiff, went by these numbers. We see no reason why the evidence offered was not competent, or why the plaintiff should be bound by a number improperly painted over a door, if it was not its official number. If a house should be described in a policy as on a certain street in a city, would it be any defence to an action for a loss that the owner of the fee in the street had, shortly before the policy was issued, and without authority, assumed to change the name of the street, and had taken down the old signs and put up new ones, so that in fact there was no street of the name mentioned in the policy in the city? Would it not be competent to show by official records that such a street did exist? Yet this differs only in degree from the case before us.

In either view of the case, we are of opinion that the order in each case must be,

*Verdict set aside; case to stand for trial.*