1. TRIAL (§ 139*)—DIRECTION OF VERDICT—WHEN AUTHORIZED.
     A dismissal at the close of defendant's case can only be sustained where the defense relied on is established as a matter of law on undisputed evidence.
     [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

2. INSURANCE (§ 278*)—FIRE INSURANCE—WARRANTIES.
     The words "warranted by the assured that the within described building is occupied exclusively for dwelling purposes by not more than two families," stamped on the face of a fire policy when delivered, mean primarily that the building is used exclusively for dwelling purposes.
     [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 593; Dec. Dig. § 278.*]

3. INSURANCE (§ 389*)—FIRE INSURANCE—WAIVER OF WARRANTY.
     Where insurer knew, when accepting a premium and delivering a policy, that the premises were not used exclusively for dwelling purposes, as specified in a warranty stamped on the face of the policy, the warranty was waived.
     [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1028–1031; Dec. Dig. § 389.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. INSURANCE (§ 378*)—WAIVER OF WARRANTY—KNOWLEDGE OF AGENT.

Where insurer's resident agent, when writing a fire policy and accepting the premium, knew that the premises were not exclusively occupied as a dwelling, as warranted by the insured, the agent's knowledge was the knowledge of the insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 968–997; Dec. Dig. § 378.*]

5. INSURANCE (§ 76*)—AGENCY—EVIDENCE.

Whether the person who solicited fire insurance was the agent of insurer was peculiarly within the knowledge of insurer, and, slight evidence of acts of agency was sufficient to establish agency, in the absence of contradictory evidence, and insured, to show agency, could prove that such person solicited the insurance, and that insured did not pay him a commission, nor authorize him to sign an application.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 101; Dec. Dig. § 76.*]

6. EVIDENCE (§ 159*)—INSURANCE (§ 664*)—SECONDARY EVIDENCE—EXISTENCE OF WRITING.

Where insurer, issuing a policy on a building occupied by a drug store and by insured's manicuring business, sought to defeat a recovery on the ground that insured had warranted that the building was occupied exclusively for dwelling purposes, evidence that there were, in the office of insurer's resident agents, maps showing the occupancy of the building, kept to give the agents knowledge to guide in determining whether they would accept offered risks, was competent and relevant to show waiver of the warranty.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 471, 474; Dec. Dig. § 159;* Insurance, Cent. Dig. §§ 1555, 1687, 1688, 1699; Dec. Dig. § 664.*]

7. WITNESSES (§ 400*)—RIGHT TO CONTRADICT ONE'S OWN WITNESS—"IMPEACHING EVIDENCE."

A party may contradict his own witness, for contradiction is not impeachment, as impeaching evidence is that which is directed solely to the question of the credibility of the witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1268, 1269; Dec. Dig. § 400.*

For other definitions, see Words and Phrases, vol. 4, p. 3420.]

Appeal from Municipal Court, Borough of Brooklyn, Second District.

Action by Cora De Noyelles against the Delaware Insurance Company of Philadelphia. From a judgment of dismissal, plaintiff appeals. Reversed, and new trial ordered.

Argued December term, 1912, before MADDOX, BLACKMAR, and PUTNAM, JJ.

William P. Hamilton, Jr., of New York City, for appellant.

House, Grossman & Vorhaus, of New York City (Charles Goldzier and Samson Selig, both of New York City, of counsel), for respondent.

BLACKMAR, J. [1] The plaintiff sought to recover for loss on an insurance policy. The defense was a breach of a covenant of warranty. The trial was before a jury and at the end of defendant's case the complaint was dismissed. The judgment, therefore, can be sustained only if the defense was established as matter of law on undisputed evidence.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[2] When the policy was delivered to the plaintiff, there was stamped on its face the words:

"Warranted by the assured that the within-described building is occupied exclusively for dwelling purposes by not more than two families."

In fact, the plaintiff was carrying on a manicuring business, and there was also a retail drug store in the building at that time. If the quoted words expressed the contract governing the rights of the parties, there was a breach of the warranty and the judgment is right. We cannot read this clause as suggested by plaintiff's counsel. There is no substantial ambiguity in it. It means, primarily, that the building was used exclusively for dwelling purposes.

[3, 4] But if the defendant had knowledge, at the time it accepted the premium and delivered the policy, that the premises were not used exclusively for dwelling purposes, the warranty was waived. For the purpose of applying this rule, knowledge of the company's agent is knowledge of the company. Haight v. Continental Insurance Co., 92 N. Y. 51; Woodruff v. Imperial Fire Insurance Co., 83 N. Y. 133. As is said in McNally v. Phœnix Insurance Co., 137 N. Y. 389, 33 N. E. 475:

"When a policy is issued with full knowledge on the part of the underwriter of facts in direct conflict with the statements on the same subject in the application, it is reasonable to assume that there was no intention to insist upon the condition, or claim a forfeiture under it."

The plaintiff was entitled to show knowledge of the occupancy of the building at the time of the issuance of the policy by the company, or by Newman & McBain, its resident agents; and if the evidence raised a question of fact, she was entitled to have it submitted to the jury. This is not the question of the warranty of a fact peculiarly within the knowledge of the plaintiff. That there was a drug store in the building was open and obvious, even to a passer-by in the street, and yet, by a rubber stamp placed on the policy, the defendant makes the plaintiff represent that there was no drug store or manicuring there. It is obvious that she did not mean to so represent; but she is held to do so, because she accepted the policy with those words stamped on it. The plaintiff could avoid the fatal effect of this inference only by establishing the facts warranting another inference, viz., that the defendant had waived the warranty. This may be successfully established by showing that the company, or its agents, had knowledge of the facts.

[5] We find on examining the record that the plaintiff was hampered in her attempt to show this knowledge on the part of the underwriter by untenable objections to the admission of evidence. It was an important question whether the person who brought the policy to the plaintiff and collected the premium was an agent of the company, for he came into the building and necessarily knew its occupancy; but the plaintiff was not permitted to testify that he solicited the insurance, nor that she did not pay him a commission, nor that she did not authorize him to sign an application. To all these rulings the plaintiff excepted. Whether this person was the agent of the company or

not was peculiarly within the knowledge of the defendant. Under these circumstances, slight evidence of acts of agency would be sufficient, in the absence of contradictory evidence.

[6] The plaintiff also sought to establish this knowledge by calling Walter McBain, one of the company's agents, and presumably a hostile witness. The purpose was to show that he had maps and cards in his possession showing the occupancy of the building, which were kept for the purpose of informing him, and presumably did inform him, of the occupancy when the policy was issued. If this had been shown, the question of waiver of the warranty would have been for the jury. The plaintiff had demanded these papers by a notice to produce, and had sought them by a subpœna duces tecum served on the witness McBain. Nevertheless they were not produced. The testimony of this witness, read in the light of the attitude and concessions of his counsel, furnished some evidence that there were such maps and cards in the agent's possession. As they were not produced, the plaintiff had the right to prove their contents by secondary evidence. For that purpose, he called as a witness an insurance broker named Armstrong, who was shown to have knowledge, and asked him this question:

"Did you examine the map in the office of Newman & McBain, showing the character of the occupancy of No. 259 Ryerson street?"

The defendant's counsel objected to the evidence as immaterial, irrelevant, and incompetent. The objection was sustained, and plaintiff excepted. The defendant's counsel then added:

"And if offered for the purpose of showing that there was a map, I object on the ground that he is impeaching his own witness."

The plaintiff's counsel said:

"He was a hostile witness."

To which the court rejoined:

"I cannot assume that; you offered him and vouched for him. I will sustain the objection."

And plaintiff excepted. This, we think, was error. The evidence that there were maps in the office of Newman & McBain, showing the occupancy of the premises in question, and kept for the purpose of giving them knowledge to guide in determining whether they would accept offered risks, was competent, relevant, and material.

[7] Neither did the evidence impeach the witness McBain. To contradict is not to impeach. Evidence relevant to the issue formed by the pleadings cannot be excluded, because it contradicts another witness called by the same party, whether such witness is hostile or friendly. Impeaching evidence is that which is directed solely to the question of the credibility of the witness.

The plaintiff should be permitted to offer any evidence which she may have relevant to the question whether defendant, when the policy was delivered, had knowledge that there was a drug store and manicuring establishment in the building, and, if there be any legal evi-

dence tending to show such knowledge, the case should be submitted to the jury.

The judgment is reversed, and new trial ordered, with costs to abide the event. All concur.