tinuously stationed these automobiles in the places specified. The ordinance permits that, as soon as an automobile is taken by a customer, its place shall be taken by another automobile; and so the ordinance contemplates the continued presence of vehicles, not the continuous movement of vehicles through the streets, but as stations for them to remain until they are hired, as obstructions in the street and to plaintiff's entry to his own premises, and that the number of automobiles specified shall always be continued there, although the mass of vehicles shall not at all times be the same. It seems to me that this was a direct violation of the legislative prohibition that:

"The city shall have no power to authorize the placing or continuing of any encroachments or obstructions upon any street or sidewalk, except the temporary occupation thereof during the erection or repair of a building on a lot opposite the highway."

The establishing of such a condition without the consent of the abutting owner was in itself an impairment of the abutting owner's easement in the street, and that easement could not be thus appropriated or impaired without the consent of the abutting owner. The ordinance, therefore, so far as it established these cab stands in front of and adjacent to private property abutting on the streets of the City of New York, was in excess of the legislative powers of the city authorities, and was an appropriation of private property without compensation, and was illegal and void.

I concur with Mr. Justice SCOTT that the order appealed from should be reversed, and the injunction continued.

---

(159 App. Div. 493.)

CURNEN v. LAW UNION & ROCK INS. CO., Limited.

(Supreme Court, Appellate Division, Second Department. December 5, 1913.)

1. INSURANCE (§ 165*)—CONSTRUCTION OF CONTRACT—DESCRIPTION OF LOCATION.

That through the inadvertence of the insured's brokers a policy on the contents of a building described it as situated at the northeast, instead of the northwest, corner of the intersection of certain streets, did not avoid the insurance, where there was no other building on either of the four corners.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 351; Dec. Dig. § 165.*]

2. INSURANCE (§ 163*)—CONSTRUCTION OF CONTRACT—DESCRIPTION OF PROPERTY.

It is a rule of construction that, where there is an inaccuracy in the description of the premises in a policy, the erroneous part of the description may be rejected without affecting the policy, if enough remains to identify the premises intended.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 339–346; Dec. Dig. § 163.*]

3. INSURANCE (§ 665*)—CONSTRUCTION OF CONTRACT—DESCRIPTION OF LOCATION.

In an action on a fire policy, evidence *held* to show that the insurer was not harmed by an inadvertent description by the insured's brokers of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dwelling containing the insured property as located on the northeast, instead of the northwest, corner of certain streets.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

4. INSURANCE (§ 558*)—PROOF OF LOSS—IMPLIED WAIVER.

The provision of a policy requiring proof of loss within 60 days was waived by the adjuster accepting a schedule of the insured property and requesting the holding in abeyance of the question of liability, which was not denied until more than 60 days after the loss, and by the retention of proof of loss furnished after the expiration of 60 days.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1382–1390, 1405; Dec. Dig. § 558.*]

Appeal from Trial Term, Westchester County.

Action by James F. Curnen against the Law Union & Rock Insurance Company, Limited. From a judgment for plaintiff, the defendant appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLETON, and PUTNAM, JJ.

Hartwell Cabell, of New York City, for appellant.
John T. Fenlon, of New York City, for respondent.

PUTNAM, J. [1] Plaintiff recovered for a loss of $1,500 under the defendant's policy. The insurance was on furniture and personal effects "contained in or on the building, additions and extensions thereto, situate northeast cor. of 2nd street, and Wolf's lane, Pelham Heights, New York. Occupied as frame dwelling." Plaintiff for two years previously had carried a $5,000 policy with the defendant, with the same description, which had been renewed early in 1911. Part of the effects were then removed, so that the plaintiff then surrendered this policy, and his insurance was reduced to $1,500 by the policy here in suit.

The fire occurred April 7, 1911. It was then found that the premises in which the property was contained were at the north*west* corner of Second street and Wolf's lane instead of the north*east* corner as described, an inadvertence by plaintiff's brokers when the first policy was obtained. There was no other frame dwelling on the four corners of these intersecting streets. This policy was dated March 29, 1911, and the premium had not been paid. Notice of the loss was given to the defendant's agents by letter of April 7th. The defendant selected an adjuster, and a schedule or inventory of the insured property was accordingly sent to the adjuster by plaintiff's brokers. Before the adjuster inspected the loss, he had been informed by defendant's agents of the error in describing this corner location. On April 17th, plaintiff's brokers paid the premium on this policy, which the defendant's agents retained. The adjuster found that there had been a total loss, the amount of which has not been controverted. He also saw that the location had been misdescribed. Neither the adjuster nor the defendant ever asked for a further proof of loss, beyond the schedule sent by the assured, which the adjuster retained. The effect of naming the wrong street corner was talked over between the adjuster and plaintiff's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

brokers. The adjuster asked that this question should be held in abeyance to await the arrival from Chicago of Mr. Shaw, defendant's general agent, who in turn submitted the affair to the home office at London. About June 23d (more than 60 days after the loss), a sworn proof of loss was served, which defendant also retained. In July, however, defendant announced that it declined any liability. Some months afterward it suggested dividing the loss with plaintiff's brokers, and sent a check for $750 as its half; but this proposed compromise was not accepted.

The trial court, sitting without a jury, found that the building on the northwest corner of Second street and Wolf's lane was where the property covered by the policy was intended to be insured. Further, that defendant had waived any misdescription of the insured premises. The court also found that plaintiff had performed all the policy conditions except service of proof of loss within 60 days after the fire, which had been waived by the defendant.

Upon this appeal defendant urges: (1) That the misdescription of the street corner location was fatal to plaintiff's right to recover; (2) that the payment and receipt of the premium after the loss worked no estoppel; and (3) that defendant did not waive due service of a sworn proof of loss.

[2] There was no other house or building of any kind at this street intersection, either at the date of the last policy or at any previous time. Hence no building other than the one where the insured effects were could have been intended. Such an inaccuracy raises a question of construction: Can the part plainly erroneous be rejected, and yet leave enough to designate the location with certainty?

This rule of construction has frequently been resorted to in aid of clerical misdescriptions of the site of insured buildings or of buildings containing the property to be insured. The rule of rejecting such errors, where sufficient remains to show the place intended, has been applied where the building containing the subject-matter has been described by an inaccurate street number (Westfield Cigar Co. v. Insurance Cos., 165 Mass. 541, 43 N. E. 504); where a warehouse containing the insured goods was described from the street number in the rear, instead of on the street where it fronted (Edwards v. Fireman's Insurance Co., 43 Misc. Rep. 354, 87 N. Y. Supp. 507); and where furniture insured was inadvertently written as on the southerly, instead of the northerly, side of a country road (Le Gendre v. Scottish Union & Nat. Ins. Co., 95 App. Div. 562, 88 N. Y. Supp. 1012). Also, as here, where a street corner was denoted by a wrong compass direction. Burr v. Broadway Insurance Co., 16 N. Y. 267. This last case raised a further difficulty, as the insured did own two buildings quite similar on the northwest and at the southwest corners of the crossing streets. Yet by eliminating from the policy "No. west," enough was left to make certain the building to which the contract related.

As mistakes in the compass direction of streets, roads, and boundary lines are frequent, this clerical error of the brokers in writing in northeast did not avoid the insurance. Where the absence of any other corner building establishes the intent beyond contradiction, the court

rightly held that plaintiff's effects in the only frame building at this street intersection, though at the northwest corner, were intended to be insured.

[3] It was, however, urged at the trial that this inadvertence had harmed defendant, since in reliance thereon it had taken another risk of $3,500 on this residence, while its own rules for local agents limited such lines to $3,500. Its book of rules, however, did not indicate that such limitations bound in any way the general offices, nor does it appear that the limit on the contents of this building had been exceeded. Considering that fire insurance offices have local maps so as to keep track of any cumulative lines (De Noyelles v. Delaware Ins. Co., 78 Misc. Rep. 649, 138 N. Y. Supp. 855), and that when this $3,500 insurance on the residence was taken in December, 1910, the defendant already had a larger line on plaintiff's furniture by the prior policy, the duty upon defendant to investigate, and if necessary to reinsure any excess, cannot be set up to avoid liability to plaintiff. As was said of the insurer in Le Gendre v. Scottish Union & Nat. Ins. Co., supra:

"If it did investigate it would have discovered the true location of the plaintiff's residence. Had it done so within a reasonable time, and had there been any basis for claiming it had been misled to its prejudice, it might have rescinded the contract and returned the premiums." 95 App. Div. 566, 88 N. Y. Supp. 1012, 1014.

[4] By defendant's acting on the furniture schedule which plaintiff promptly furnished, and in asking to hold in abeyance the question of liability until it had been referred to London, as well as by finally retaining the sworn proof of loss without objection, it waived the policy requirement of a formal proof of loss within 60 days. Defendant's acceptance of the premium after the loss, and after the adjuster had learned of the mistake in location, with no subsequent offer to return it to the assured, was not consistent with its position that the risk had never attached. Richards on Insurance, p. 217.

The trial court therefore rightly directed judgment for plaintiff, which should be affirmed, with costs, and I so advise.