FRANK NAMA, APPELLEE, v. NICK SHADA, APPELLANT.

34 N. W. 2d 650

Filed November 12, 1948. No. 32454.

*Dryden & Jensen,* for appellant.

*Blackledge & Sidner,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is an action at law seeking to recover for personal injuries and property damage growing out of an automobile accident which occurred in Buffalo County. The jury returned a verdict for plaintiff for $1,100. Supersedeas bond was given in the sum of $1,500.

In his appeal the defendant sets out as assignments of error that the court should have sustained defendant's motions for an instructed verdict in his favor; that the court should have sustained defendant's motion to declare a mistrial because of prejudicial matters occurring in the voir dire examination of jurors; that the court erred in giving instructions Nos. 1, 5, 7, and 13; and that the verdict is contrary to the evidence and the law.

In the brief it was claimed that the principal ground for reversal is that the jury's verdict is not supported by the evidence, and for that reason we will set out the following:

The plaintiff, driving a Model A Ford automobile, started east from Kearney on Highway No. 30 about 9:15 p. m. on March 9, 1947. The pavement was slippery and it was snowing and misting. After an eastbound bus passed him he noticed cars coming from the east. The evidence discloses that the first one approaching him was a 1932 Chevrolet driven by Manuel Salano, whose wife was riding in the front seat with him. The second car approaching was the 1937 Buick of defendant. The third car was one driven by Eddie J. Brown, whose wife was in the front seat with him, and he had picked up two soldiers at the filling station in Gibbon.

The facts with respect to the collision, as the plaintiff contends, are as follows: The defendant attempted to pass the Chevrolet car driven by the Mexican, Salano,

and crossed over to the left or wrong side of the highway. Salano pulled far over to the right, with his right wheels off the pavement, as he did not think the defendant had room enough to get by him and back into the north side of the highway. Defendant's left rear bumper hit plaintiff's left front fender, the left front tire going flat, causing the plaintiff's car to go over into the north half of the highway, resulting in a head-on collision with the Salano car. The plaintiff was immediately taken to the hospital for treatment of his injuries.

The sheriff went out after the accident, arriving about 9:40 p. m. He said the snow was falling heavily, so that he had to use windshield wipers, and there was about two and a half inches of wet snow on the ground, so that he was unable to find any indication of the position of the cars in the highway when they collided. He said the defendant's car was 75 to 100 yards west of the cars of plaintiff and Salano, which cars were over to the north side of the road. Plaintiff's car was headed east, with its left front wheel off the north side of the paving, and the Salano car was headed in a northwesterly direction, with its left front wheel about a foot and a half from the north edge of the paving and its left rear wheel two and a half or three feet from the north edge of the paving, these two cars having collided head-on. The left rear fender of defendant's car was torn and the left end of the rear bumper was bent back about a foot and a half.

With this brief summary, we will examine the evidence and the claims made by defendant in reference thereto.

It is clear from reading the evidence that the plaintiff was not well versed in the English language, and also that Manuel Salano, who was a Mexican, was deficient in knowledge and use of all the words of our language.

When the plaintiff was examined by his own counsel he testified that the defendant's car attempted to pass the car driven by Salano, both of them going west, and

that the defendant's car struck him while he was going east on the south side of the highway.

The plaintiff's witness, Manuel Salano, whose car the defendant endeavored to pass, testified that he figured "it was going to hit the other car," so he ran his car out to the north so that only the left two wheels were still on the pavement, in an endeavor to give the defendant opportunity to get back into the road in front of him without striking the oncoming car of the plaintiff.

On cross-examination both the plaintiff and Salano testified that the defendant's car was north of the center of the road; in other words, that he had passed Salano's car and had returned to the north side of the road and was north of the center, and the defendant testified that the plaintiff's car came across the center of the highway and struck him. However, on their redirect examination the plaintiff and Manuel Salano were most carefully examined by plaintiff's attorney and positively reaffirmed their testimony as given on direct examination.

The defendant's counsel argued that, with the testimony entirely in defendant's favor on cross-examination, the court should have instructed a verdict for the defendant. On the other hand, it was argued by the plaintiff's attorney that the plaintiff and Salano, a Mexican, answered rapidly to questions on cross-examination which they did not understand; that, while no interpreter was used for either of them, they were deficient in a knowledge of the English language; that when they were examined more deliberately on redirect examination their evidence was straightened out and agreed exactly with what they had said on direct examination; that this matter of the apparent confusion in their testimony was a question for the jury to determine; and that the trial court, having heard the evidence and seen the witnesses while they were testifying, refused to instruct a verdict for the defendant and allowed the case to be submitted to the jury.

This court has repeatedly held that if there is testimony by which a verdict in favor of the party on whom rests the burden of proof can be upheld, the trial court is not at liberty to disregard the testimony and direct a verdict against such party.

One of the defendant's assignments of error is the failure of the court to declare a mistrial at the time the jury was being impaneled. In the bill of exceptions there is preserved a partial record relating to this assignment of error.

It appears that upon the voir dire examination of Mrs. Clarence Alcorn she was asked a question as to whether there was any reason why she should not serve as a juror in this case, and she started to make the reply that she understood that Mr. Shada, the defendant, had insurance, and the defendant's attorney stopped her and would not let her complete her answer.

The other jurors then retired to the jury room and Mrs. Alcorn alone remained in the courtroom for further examination. This matter was gone over at some length, and she was questioned by the court: "What statement did you make? Those were not your exact words, I don't believe. A I said I thought that he had insurance. I didn't get to finish it. * * * The Court: Well, what would have been your answer had you been permitted to finish it. A That he had insurance with the company my husband represents. The Court: What kind of insurance do you have reference to? A That is the Metropolitan Life Insurance Company."

Thereupon the defendant's attorney objected to any further procedure in the trial "before this jury panel, for the reason that the information as given by this jurywoman in the presence of the other jurors, will result in prejudice to the defendant and to his case, and asks that the jury be discharged and the matter continued over the term." This objection was overruled and the jury were recalled to the courtroom. Thereupon the attorney for plaintiff interrogated Mrs. Alcorn

as follows: "Q Mrs. Alcorn, what sort of business is your husband in. A Metropolitan insurance. Q That is life insurance coverage? A Life insurance. Q And the statement that you made about insurance, was that that maybe Mr. Shada had some life insurance with your husband? A It's life insurance. Q You know of no other reason why you should not serve as a juror in this matter? A No. Q You don't yourself collect the life insurance premiums or have anything to do with any life insurance dealings between your husband and Mr. Shada? A No, sir. Q And that would not in any way affect your—whether you could sit as a fair and reasonable juror in this matter? A It wouldn't affect it, no." The entire jury were thereupon sworn to try the case, including the jurywoman Mrs. Alcorn.

Defendant's counsel cites the case of Bergendahl v. Rabeler, 131 Neb. 538, 268 N. W. 459, to the effect that counsel must refrain from asking jurors any question on their voir dire which would indicate that defendant is indemnified against paying damages in case of a verdict against him, and in that case a verdict in the sum of $7,500 was reversed.

In the case at bar, we have reached the conclusion that the further voir dire examination of the juror, showing clearly that the insurance that she was talking about was life insurance and had nothing to do with automobile insurance, would clarify the matter so that none of the other eleven jurors who heard Mrs. Alcorn's statement could be misled as to the kind of insurance that she was referring to, and we have reached the conclusion that this assignment of error is without merit. See, Bainter v. Appel, 124 Neb. 40, 245 N. W. 16; Brewer v. Fischer, 144 Neb. 712, 14 N. W. 2d 315; Komma v. Kreifels, 144 Neb. 745, 14 N. W. 2d 591; Herman v. Firestine, 146 Neb. 730, 21 N. W. 2d 444; 15 Neb. Law Bulletin, 327.

"The right of counsel to interrogate jurors on their voir dire examination in order to determine whether

it is expedient to challenge any of them peremptorily, within proper limits, cannot be denied." Fielding v. Publix Cars, Inc., 130 Neb. 576, 265 N. W. 726, 105 A. L. R. 1306.

"The principal contention of the appellants is that there is insufficient evidence to sustain the verdict. The effect of this contention is that the trial court should have directed a verdict for the defendants and consequently the following rule is applicable: 'When the defendant in a jury trial moves for a directed verdict at the close of plaintiff's evidence, such motion must be treated as an admission of the truth of all material and relevant evidence favorable to the plaintiff and of all proper inferences to be drawn therefrom, and if it tends to sustain plaintiff's cause of action, the case should be submitted to the jury.' Gohlinghorst v. Ruess, 146 Neb. 470, 20 N. W. 2d 381." Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499.

In regard to the instructions of the court, the defendant argues as an error that the court in instruction No. 1, in setting out a very brief summary of the petition, stated as an act of negligence of defendant "That he drove said automobile at an excessive rate of speed," while in the petition the plaintiff, in setting out the acts of negligence of the defendant, alleged: "b. That he drove said automobile at an excessive rate of speed for the condition of the road and the travel thereon."

It is of interest to note that in the answer and cross-petition the defendant charged plaintiff "2. In that he drove his said automobile at an excessive rate of speed under the circumstances and conditions of the traffic and conditions of the weather thereon, said speed being in excess of 40 miles per hour." The court, in similarly summarizing the defendant's answer, in instruction No. 2 cut this statement to "That the plaintiff drove at an excessive rate of speed."

In this connection it may be well to note that section 39-7,110, R. S. 1943, provides generally that no vehicle

shall be driven to the left of the center of the roadway to pass another vehicle unless it can return to the right hand side of the roadway before coming within 100 feet of an approaching vehicle.

The jury could have found from the evidence that defendant violated this rule and also drove his car on a slippery highway in a snowstorm at a speed which was so great as to contribute to the accident in this case.

"Where the vision of the driver of an automobile is obstructed for any cause, ordinary care requires him to proceed with more caution than where he has an unobstructed vision. Obstruction of vision may arise from various causes." 5 Am. Jur., Automobiles, § 269, p. 652.

This court said in Tews v. Bamrick, *supra:* "What is a reasonable speed is necessarily largely dependent on the situation and the surrounding circumstances, it being obvious that a speed which would be safe, reasonable, and proper in some places and under some circumstances might be highly dangerous, unreasonable, and improper in other places and under other circumstances."

In instruction No. 4 the court said: "You are instructed that the foregoing Instructions No. 1, 2, and 3, set forth in substance the pleadings filed by the respective parties in this case, and are given to you for the sole and only purpose of advising you of the respective contentions of the parties.

"You are instructed that the pleadings filed in a case are not evidence except insofar as they may admit certain allegations to be true.

"Any and all allegations contained in the pleadings which are not supported by the evidence you will disregard."

This instruction clearly advised that the first three instructions just given were but a summary of the claims made by the parties and that any statement therein not supported by the evidence was to be disregarded.

The trial court was told in Franks v. Jirdon, 146 Neb. 585, 20 N. W. 2d 597, that pleadings must not be copied

into the instructions, but that a clear and concise statement of those issues which found support in the evidence should be set out. See Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439.

In the case at bar, the court might perhaps have omitted any reference to speed of the automobiles, but it was found in the allegations of both the petition and the answer and the court attempted to condense it in a manner the defendant insists is prejudicially erroneous. In our opinion, the clear statements of instruction No. 4 could leave the jury in no doubt that such statement was not evidence, and we do not find the same was prejudicially erroneous.

The judgment of the trial court on the verdict is hereby affirmed.

AFFIRMED.