ROBERT GRIESS, BY MOTHER AND NEXT FRIEND, JOHANNA GRIESS, APPELLEE, V. DEAN BORCHERS, APPELLANT.

72 N. W. 2d 820

Filed November 4, 1955. No. 33774.

*John E. Dougherty,* for appellant.

*Massie, Bottorf & Massie* and *Perry, Perry & Nuernberger,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff Robert Griess, a minor 17 years old at time of the accident, brought this action by his mother and next friend against defendant Dean Borchers, seeking to recover damages for personal injuries alleged to have been proximately caused by negligence of defendant when, about 11:50 p. m. April 10, 1954, a car owned and driven by defendant and one driven by plaintiff collided at an open intersection of graveled county highways about 6 miles southeast of Clay Center. By answer and cross-petition defendant admitted that an accident occurred at such time and place, but denied that he was negligent, and alleged that the sole and proximate cause

of plaintiff's injuries and damages was plaintiff's own negligence. Defendant prayed for dismissal of plaintiff's petition and to recover for personal injuries and damages to his car. Plaintiff's reply to defendant's answer and answer to defendant's cross-petition denied generally and alleged that the negligence of defendant was gross in character. Motions for directed verdict made by defendant at close of plaintiff's evidence and renewed at close of all the evidence, were overruled, and the issues were submitted to a jury which returned a verdict filed and entered of record by the court finding for plaintiff and awarding him $15,000. Defendant's motion for judgment notwithstanding the verdict or in the alternative for new trial, was overruled. Therefrom he appealed to this court, assigning substantially: (1) That the trial court erred in failing to sustain his motions for directed verdict; (2) that the judgment against defendant was not sustained by sufficient evidence but was contrary thereto and contrary to law; (3) that the trial court erred in giving certain instructions; and (4) that the trial court erred in receiving, excluding, and striking certain evidence. We conclude that the assignments should not be sustained.

Turning to assignments of error Nos. 1 and 2, we have examined the evidence in the light of well-established rules. In Pahl v. Sprague, 152 Neb. 681, 42 N. W. 2d 367, it is held: "A motion for directed verdict or for judgment notwithstanding the verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence.

"In negligence cases the trial court should sustain a a motion for directed verdict or for judgment notwithstanding the verdict, only when the evidence, viewed

in the light most favorable to the party against whom the motion is directed, fails to establish actionable negligence.

"In a law action, it is error for the trial court to direct a verdict for either of the parties on an issue of fact on which the evidence is conflicting. Such issue should be submitted to the jury for its determination.

"Negligence is a question of fact and may be proved by circumstantial evidence. All that the law requires is that the facts and circumstances proved, together with the inferences that may be legitimately drawn from them, shall indicate, with reasonable certainty, the negligent act complained of.

"When a person enters an intersection of two streets or highways he is obligated to look for approaching cars and to see those within that radius which denotes the limit of danger. If he fails to see a car which is favored over him under the rules of the road, he is guilty of contributory negligence sufficient to bar a recovery as a matter of law. If he fails to see an automobile not shown to be in a favored position, the presumption is that its driver will respect his right-of-way and the question of his contributory negligence in proceeding to cross the intersection is a jury question.

"Where different minds may draw different conclusions from the evidence in regard to negligence, the question should be submitted to the jury. It is only where the evidence shows beyond dispute that plaintiff's negligence is more than slight as compared with defendant's negligence, that it is proper for the trial court to instruct the jury to return a verdict for defendant or enter a judgment notwithstanding the verdict."

As held in Becks v. Schuster, 154 Neb. 360, 48 N. W. 2d 67: "Where two motorists approach an intersection at or about the same time, the driver approaching from the right has the right-of-way, and he may ordinarily proceed to cross, having a legal right to assume that his

right-of-way will be respected by the other driver, but if the situation is such as to indicate to the mind of an ordinarily careful and prudent person in his position that to proceed would probably result in a collision, then he should exercise ordinary care to prevent an accident, even to the extent of waiving his right-of-way."

On the other hand, as held in Long v. Whalen, 160 Neb. 813, 71 N. W. 2d 496: "A vehicle which has entered an intersection and is passing through it at a lawful speed has the right-of-way over a vehicle approaching the intersection from a different direction into its path." Such case also reaffirmed that one having the right-of-way may not on that account proceed with disregard of the surrounding circumstances, nor is he thereby relieved from the duty of exercising ordinary care to avoid accidents.

In Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569, we held: "The lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing."

In Granger v. Byrne, 160 Neb. 10, 69 N. W. 2d 293, we reaffirmed that: "The verdict of a jury, based on conflicting evidence, will not be disturbed unless clearly wrong."

The record discloses competent evidence, part of which is without dispute, the rest of which is conflicting, from which the jury could reasonably have concluded, as it evidently did, as follows: Plaintiff, 18 years old at the time of trial, who had been graduated from high school, was employed doing construction work and earning $58 a week. Prior to the accident he was driving his brother's 1949 Ford car from the south toward the north on his right side of a 27-foot double-track gravel highway with his left wheels near the center line. The car was in good condition and the lights had been turned on bright at all times since he left

Edgar, some 10 or 12 miles from the point of accident. Plaintiff was traveling at about 50 miles an hour and continued at that speed up to the point of accident. It was a clear night and the highway was dry with the view unobstructed for one-half mile each way from the intersection where the collision occurred. A young man, 18 years old at time of trial, was riding with plaintiff. He had been drowsy, but upon being aroused he turned his head and saw defendant's lights coming from the west a couple of feet from the back of plaintiff's car.

Defendant, a senior in high school at time of the accident, who had been graduated at time of trial, was driving his 1950 Studebaker car from the west toward the east over a double-track gravel highway, the travel portion of which was 26 feet wide. His girl friend, a junior in high school at that time, was riding with him.

When plaintiff was about one-fourth mile from the intersection he looked to the left and saw defendant's car headed east about one-half mile away from the intersection. Plaintiff could not tell then whether or not defendant's car was moving. When plaintiff was about one-eighth of a mile from the intersection he looked again and saw defendant's car coming from the west about one-fourth mile from the intersection. Plaintiff did not actually turn his head to look again, but he could and did see the beam of light from defendant's approaching car at all times before entering the intersection. Believing that he had plenty of time, since defendant was then at least three car lengths west of the intersection, plaintiff went into the intersection, and, thinking that he was through the interesection, the front of his car having passed beyond the intersection to the north, he turned and saw defendant's car right behind his own and they collided. There in the northeast quarter of the intersection the left front end of defendant's car hit the left rear of plaintiff's car which was hurled into the air off the highway toward the northeast a distance of 15 or 25 feet, where, sliding sideways, it

turned over on its side or top, slid about the length of the car, then struck the bank to the northeast, and went north, stopping upright, headed north in the east ditch about 156 feet from where the impact occurred north of the middle of the intersection. Plaintiff was thrown from his car out upon the highway and was found unconscious about 35 feet north of his car. As a result of the accident his spinal cord was severed at about the fifth or sixth cervical vertebrae, causing permanent and total disability by almost completely paralyzing his body from that point to his waist, and completely and permanently paralyzing his body from his waist down. He was hospitalized from April 11, 1954, until July 3, 1954, during which period surgery, medical care, and hospital attention were required at great expense. He did and will in the future suffer great pain and anguish and require future medical and nursing care. His life expectancy was shortened and his future earning capacity was destroyed. No contention is made here that plaintiff was not so permanently and totally disabled.

Before the impact, defendant's car skidded and swerved sideways from a point close to the south or right side of the east and west highway toward the left and northeast for about 35 feet to the point of impact north and east of the center of the intersection. From that point defendant's car went end over end, then slid and swirled around into the east bank and stopped, headed west, in the north ditch and on the east bank in the north and east portion of the intersection about 35 feet from the point of impact.

Within a short time after the accident, defendant told one witness: "* * * there was nothing he could do; he slammed the brakes and that is all he could do. * * * from the time he seen what was going to happen, it was beyond help."

To another witness defendant said: "* * * that he seen the car coming and he stepped on his brakes to

stop and he slid a ways and then he decided maybe he could make it so he stepped on it."

To another witness both defendant and his girl companion said: "They saw the lights and * * * thought they could beat it across the intersection. * * * if they would have stepped on the gas they know they could have gotten across the intersection. * * * 'I am sure we could have made it if we would have stepped on the gas.'"

To another witness they said: "* * * that they hit Bob. They had seen his lights, but they thought that they could get over the intersection before he come. * * * they saw the lights and thought they could get across there first * * *."

To plaintiff's brother they said: "* * * they hit my brother's car, and they were coming from the west and my brother from the south" and they "saw him, but figured they would beat him across the intersection before he got there. * * * they had seen him coming, but they thought they would get across before he got there."

On the other hand, defendant and his companion both denied that the foregoing statements were true or that they were ever made by them. Their testimony was substantially that during the last one-half mile, before reaching the intersection, they drove about 40 or 45 miles an hour; that as they approached the intersection, they slowed down to about 35 or 40 miles an hour and looked right and left several times but saw no lights approaching; that when they were about 40 feet from the intersection and driving on the right side of the highway, they saw the lights on plaintiff's car turn on when he was about 65 feet from the intersection; that plaintiff's car was then coming from the south at a speed of 65 or 70 miles an hour; whereupon defendant slammed on his brakes hard but slid and swerved slightly to the left for about 35 feet, and the impact occurred just

north and east of the center of the intersection when defendant was traveling about 15 miles an hour.

In the light of the foregoing evidence and rules of law we conclude that the issues of negligence were for determination by the jury. There was ample competent evidence to sustain the verdict and a judgment rendered thereon. Therefore, assignments of error Nos. 1 and 2 have no merit.

Instruction No. 1, Part I, summarized the allegations of plaintiff's petition. Subparagraph 3 thereof contained the allegation that defendant was negligent because he "drove said vehicle at an excessive and unlawful rate of speed under the circumstances, to-wit, approximately sixty-five miles per hour." Defendant argued that the record contained no specific evidence that defendant was driving 65 miles per hour, and it was prejudicially erroneous to submit such allegation. In that connection, instruction No. 1 also told the jury that the statements contained therein were simply an outline of the claims and contentions of the parties and were not to be considered as proof or evidence unless admitted to be true by either or both of the parties. Further, there was ample competent evidence from which the jury could have concluded that defendant was driving at an excessive and unlawful rate of speed under the circumstances.

In Becker v. Hasebroock, 157 Neb. 353, 59 N. W. 2d 560, which presented a comparable situation, this court said: "Under such circumstances there was no error prejudicial to the rights of the defendant. Nama v. Shada, 150 Neb. 362, 34 N. W. 2d 650." The applicable rule reaffirmed therein is that: "Errors in instructions not prejudicial to the complaining party do not require a reversal of a judgment otherwise correct." Defendant's contention should not be sustained.

Subparagraph 4 of instruction No. 1, Part I, also submitted plaintiff's allegation that defendant "failed to make proper and adequate use of the braking facilities

on his car." Contrary to defendant's contention, as heretofore set forth, there was competent evidence to support such allegation.

Instruction No. 1, Part I, also submitted plaintiff's allegations that as a direct and proximate result of defendant's alleged negligence, plaintiff proximately received described severe permanent and complete personal injuries and damages. It then said: "Plaintiff further claims that at the time of said accident, he was earning $58.00 per week and that by reason of such injuries plaintiff has been totally and permanently injured to his damaged (damage); that plaintiff will incur hospital, doctor and medical bills in a substantial amount and that plaintiff will be required to obtain and receive special hospital care and attention the rest of his life; that plaintiff has suffered and will be forced to continue to suffer extreme severe and continuous pain to his damage.

"For all of which plaintiff prays damage in the sum of $60,000.00."

Defendant argued that the last sentence aforesaid was prejudicial to defendant's rights because it set forth the amount which plaintiff sought to recover. In Tate v. Barry, 144 Neb. 517, 13 N. W. 2d 879, this court held: "In summarizing the allegations of the petition, it is not prejudicial error to set out in an instruction the amount for which the plaintiff prays damages." Such case was cited with approval in Remmenga v. Selk, 152 Neb. 625, 42 N. W. 2d 186, wherein we held: "While in a personal injury action the better practice is to state to the jury in suitable words that plaintiff sues for an amount sufficient to compensate him for the loss sustained, it is not ordinarily prejudicial error to state the amount for which the action is brought." Such cases are applicable and controlling here. Defendant's contention has no merit.

Defendant also argued that such part of instruction No. 1, Part I, as referred to hospital, doctor, and medi-

cal bills and further medical attention and hospitalization, was erroneously submitted as a part of plaintiff's cause of action, because the obligation to keep, maintain, and support plaintiff, a minor, was the obligation of his parents who were entitled to his wages during minority. The contention should not be sustained.

In that connection, the record discloses that by pleadings, evidence, stipulation, and waiver, without any objection, the case was tried and submitted as if and upon the theory that plaintiff had been emancipated and was entitled to his wages and was personally liable for such obligations, therefore, if the jury found for plaintiff, he would be entitled to recover the same. Further, the question was raised for the first time in this court. In Welch v. Reeves, 142 Neb. 171, 5 N. W. 2d 275, this court held: "When a certain theory as to the measure of damages is relied upon by the parties in the trial court as the proper one, it will be adhered to on appeal whether it is correct or not." Also, it is the rule that: "A party cannot predicate error upon a ruling which he procured to be made." Pahl v. Sprague, *supra*.

In a similar manner, and for like reasons, defendant argued that instruction No. 8 relating to the measure of damages recoverable if the jury found for plaintiff, was erroneous because it also submitted the elements among others of "the reasonable value of hospitalization, nursing services and medical care" and "the reasonable value of the time lost from work to date and loss of earning capacity that plaintiff will suffer * * *." For reasons just heretofore stated, that contention should not be sustained.

In that connection, defendant also argued that instruction No. 8 was erroneous because it submitted the question of plaintiff's "pain and suffering * * * and the extent" thereof and the reasonable value of plaintiff's "time lost from work to date and the loss of earning capacity that plaintiff will suffer" without confining it to such loss as is shown by the evidence with reason-

able certainty. In that respect, instruction No. 8, conjunctive in character, specifically told the jury: "If you find for the plainiff (plaintiff) you will then proceed to assess the amount of the plaintiff's damages at such sum as will fairly and reasonably compensate him for any and all injuries, pain, suffering, reduction of his life expectancy, reduction of his earning capacity, and any other loss which the evidence shows *with reasonable certainty* proximately to have been caused by the defendants (defendant's) negligence, and you should consider all of the evidence shown to be the pain and suffering, if any, so caused and the extent of the same, * * * and the reasonable value of the time lost from work to date and the loss of earning capacity that plaintiff will suffer by reason of his injuries arising out of such acts of the defendant driver." (Italics supplied.) It will be noted that the words "with reasonable certainty" are all-inclusive and qualify the elements of damage about which defendant complains. The instruction was not prejudicially erroneous.

Instructions No. 2 and No. 3 with relation thereto submitted in proper form the burden of proof imposed upon plaintiff and the question of plaintiff's alleged contributory negligence which was an issue pleaded in defendant's answer and cross-petition. Contrary to defendant's contention, instruction No. 3 was correct in every respect. It appears also that plaintiff's reply to defendant's answer and his answer to defendant's cross-petition denied each and every allegation contained therein and alleged that the negligence of defendant was gross in character. In that respect, instructions No. 4 and No. 5 with relation thereto, submitted the burden of proof imposed upon defendant and the question of defendant's contributory negligence involved in his alleged right to recover upon his answer and cross-petition controverted by plaintiff's reply and answer thereto. Contrary to defendant's contention, plaintiff did put in issue the question of defendant's contributory negligence

when in his petition plaintiff pleaded that defendant was negligent and pleaded in his reply and answer that defendant was guilty of gross negligence. Defendant's contention requires no further discussion except to cite Tempero v. Adams, 153 Neb. 331, 44 N. W. 2d 604, and Hamilton v. Omaha & C. B. St. Ry. Co., 152 Neb. 328, 41 N. W. 2d 139, which are controlling.

Defendant also argued that instruction No. 4, relating to the burden of proof imposed upon defendant with regard to plaintiff's alleged contributory negligence, was prejudicially erroneous because it failed to inform the jury that in such respect defendant was entitled to receive the benefit of any evidence adduced by plaintiff tending to prove that he was negligent. Defendant relied upon Mundy v. Davis, 154 Neb. 423, 48 N. W. 2d 394, which held: "If the defendant pleads that the plaintiff was guilty of contributory negligence the burden is upon him to prove that defense and this burden does not shift during the trial of the case. However, if the evidence adduced by the plaintiff tends to prove that issue the defendant is entitled to receive the benefit thereof and the court must instruct the jury to that effect." We decide that although it could be reasonably concluded that the evidence adduced by plaintiff did in some respects tend to prove that he was negligent, the omission to specifically include such direction aforesaid in instruction No. 4 was not prejudicially erroneous when all of the instructions are considered together.

An applicable rule is found in Blanchard v. Lawson, 148 Neb. 299, 27 N. W. 2d 217, wherein we held: "Instructions should be considered together in order that they may be properly understood, and when, as an entire charge, they properly submit the issues to the jury, the verdict will not be set aside for harmless error in one of them.

"If an examination of all the instructions given by the trial court discloses that they fairly and correctly state the law applicable under the evidence, error can-

not be predicated thereon." See, also, Granger v. Byrne, *supra*.

In that connection, instruction No. 6, after setting forth every and all involved issuable rules of the road alleged to have been respectively violated by the parties, said: "You are instructed that failure on the part of either the Plaintiff Robert Griess or the defendant Dean Borchers to follow any of the above rules of the road and duties above set out would not of itself be negligence on his part, but you may take into consideration *any evidence* tending to show such a violation in connection *with all the other evidence* in the *case* in determining whether either the plaintiff or the defendant or both of them was negligent." (Italics supplied.) Instruction No. 13, relating to credibility of the witnesses and the weight to be given their testimony, told the jury among other things that it should take into consideration *"all other evidence, facts and circumstances* proved tending to corroborate or contradict such witnesses * * * and give such wieght (weight) to the testimony *of any witness* as in your judgment it should have fnder (under) *all the circumstances of the case."* (Italics supplied.)

All of such statements in the instructions aforesaid relate to a determination of the issues which distinguish the case at bar from Krepcik v. Interstate Transit Lines, 154 Neb. 671, 48 N. W. 2d 839. In such case, referring to the rule in Mundy v. Davis, *supra*, we said: "The better practice, of course, is that the instruction to that effect be included in the instruction on contributory negligence. That it was not so included here is patent. We recognized, however, in the above decision that if other instructions could reasonably be construed to properly advise the jury in that regard, it would be sufficient." The last sentence thereof is controlling here. See, also, City of Beatrice v. Forbes, 74 Neb. 125, 103 N. W. 1069, cited in both Mundy v. Davis, *supra*, and Krepcik v. Interstate Transit Lines, *supra*. We con-

clude that under the circumstances, the omission of the direction from instruction No. 4 was not prejudicial error. The jury could not have been misled.

Instruction No. 5½ about which defendant complains simply told the jury that both parties could not recover and that "as already stated" the case was grounded upon negligence, each party claiming himself free from negligence and charging that the injuries sustained by them respectively or the property of either was caused by negligence of the other. Contrary to defendant's contention, the primary issue was the respective alleged negligence of the parties as already theretofore stated by the court in other instructions and the fact that the instruction itself did not mention contributory negligence was not prejudicial error.

The first paragraph of instruction No. 9 defined "intersection" by use of the identical material language contained in subdivision (7) of section 39-741, R. R. S. 1943. The instruction read: "An intersection is defined as the area embraced within the prolongation of *the lateral curblines or, if none, then* the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other." (Italics supplied.) Defendant argued that inclusion of the words "the lateral curblines" was erroneous since there were none involved, the accident having occurred at an intersection of open country highways which crossed each other at right angles, and should have been defined only as the area embraced within "the prolongation of the lateral boundary lines of two or more highways which join one another at an angle, whether or not such highway crosses the other." It will be noted that the latter language was included in the instruction as an alternative if there were no lateral curb lines. True, the court could as well have omitted any reference to "the lateral curblines" but under the clear language of the instruction and the specifically undisputed evidence in this case with regard to the

boundary lines and measurements of the highways and intersection thereof, the jury could not have been misled by the instruction. It was not prejudicially erroneous.

Upon direct examination, after the plaintiff had testified that he was able to and did observe the beam of defendant's lights, he was asked without objection: "Q. Were you able from that to tell about how far he was away? A. Oh, pretty close. Q. And from that were you able to tell whether or not you thought you had time enough to go through the intersection? Answer that yes or no. A. Yes." Plaintiff was then asked: "And di (did) you have time to go through the intersection ahead of this car?" Over objection by defendant that such question was incompetent, irrelevant, and immaterial, no proper and sufficient foundation laid, and called for a conclusion of the witness and not a statement of fact, the witness was permitted to answer "Yes." Defendant argued that the court erred prejudicially in overruling the objection and permitting the answer to be given. In that regard, the objection might be said to be well taken, but it was not prejudicial error to overrule the objection because prior thereto plaintiff was permitted without objection to testify that: "Before entering the intersection I seen it. I had plenty of time so I went on through." Further, no motion was made by defendant to strike such answer.

During the trial defendant was asked by his counsel: "Now, after you saw those lights coming on and after applying the brakes, was there anything else you could do to avoid that accident?" Objection thereto as asking for a conclusion of the witness and invading the province of the jury was sustained. The same objection to an offer of proof that defendant would say there was nothing more he could do was also sustained. Contrary to defendant's contention, the objections were properly sustained.

Defendant had testified that he was driving 35 or 40 miles an hour when he applied his brakes, and about

15 miles an hour when the impact occurred. Upon cross-examination, defendant's girl companion was asked: "And you are not saying he is incorrect about the speed at the point of impact itself, and that you are not certain that is right, is that right?" Defendant's objection that the question was argumentative, asking her to interpret somebody else's testimony, incompetent, hearsay, and calling for a conclusion of the witness, was overruled, whereupon she answered: "As to what speed he was traveling at the point of impact, I couldn't say one way or the other. I imagein (imagine) he is pretty well right." The objection might be said to be well taken, but since the answer was favorable to defendant, the overruling of the objection could not have been prejudicial error.

Upon cross-examination, defendant testified: "Q. And when you looked the last time you saw the lights? A. The lights snapped on just like that." Plaintiff's motion to strike the answer as not responsive was sustained, whereupon defendant answered "Yes." He was then asked: "And that is the first time you had seen the lights? A. Yes, that is when the lights came on." Plaintiff's motion to strike the last part of such answer as not responsive and a voluntary statement was sustained, leaving the answer "Yes." Contrary to defendant's contention, such rulings of the court were not erroneous and could not have been prejudicial in any event because upon direct examination, as heretofore observed, defendant had already been permitted affirmatively to testify fully with relation to the matter thus stricken.

We find that the verdict and judgment were sustained by competent evidence and that there was no error in the record prejudicial to the rights of defendant. Therefore, the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.