MOSES NATHAN ET AL., APPELLEES, V. AARON SANDS ET
AL., APPELLEES, AND ROSS GAMBLE, APPELLANT.

FILED NOVEMBER 18, 1897. No. 7490.

1. **Witnesses:** IMPEACHMENT. A person who calls a witness impliedly
recommends him as worthy of belief, and afterwards cannot be
permitted to introduce evidence which has no tendency other than
to impeach such witness.

2. **Fraudulent Conveyances:** EVIDENCE. Where a purchase of an entire
stock of goods was made from a merchant at a fair price and with
no knowledge that such merchant was indebted to other parties
than those whose debts were paid through such purchase, the trans-
fer will not be declared void, though the purpose of the purchaser
was, in part, to secure payment of a debt due himself and another
debt due a bank of which he was at the time the president and
managing officer.

3. ———: ———. The evidence examined and *held* insufficient to sus-
tain a finding that the transfer to appellant was fraudulent and void
as to creditors of the party by whom such transfer had been made.

APPEAL from the district court of Buffalo county.
Heard below before HOLCOMB, J. *Reversed.*

*Greene & Hostetler* and *F. G. Hamer,* for appellant.

*Ira D. Marston, S. M. Nevius,* and *Dryden & Main, contra.*

RYAN, C.

This action was brought in the district court of Buffalo
county by numerous judgment creditors of Aaron Sands,
against the said Aaron Sands, Ross Gamble, and Allie
Sands as defendants. It was alleged in the petition that
from March 1, 1890, until November 15, 1891, Aaron
Sands had been engaged in business in Kearney as a re-
tail dealer in ready-made clothing, furnishing goods,
boots, shoes, etc.; that in pursuance of a fraudulent con-
spiracy, to which all the defendants were parties, the said
Aaron Sands, upon the faith of a credit secured largely by
the recommendation of Ross Gamble, president and man-

aging officer of the Buffalo County National Bank, accumulated a stock of goods of the value of $40,000; that while the accumulation was progressing there existed an understanding between Ross Gamble and Aaron Sands that when sufficient goods had been obtained, the entire stock was to be fraudulently transferred by the said Aaron Sands to Ross Gamble, and that it was with the above fraudulent purpose in view that the merchandise was purchased by Sands from the plaintiffs, whereby the latter were ultimately compelled to become judgment creditors of the said Aaron Sands. It was further alleged that the consummation of the above described fraudulent design was the pretended sale of the accumulated stock of goods of Aaron Sands to Ross Gamble, November 14, 1891. It was charged that, at the date last named, Aaron Sands was not indebted to the Buffalo County National Bank or to Ross Gamble or both in a sum in excess of $8,000; that the recited consideration of the bill of sale evidencing the above transfer was $29,000, of which amount $6,500 was pretended to be due as clerk hire from Aaron Sands to Allie Sands, and that a simulated payment was made of this amount by Ross Gamble giving his note to Allie Sands for that amount, which note was soon afterwards returned to Gamble, and that in fact nothing was paid except the sum not exceeding $8,000 above referred to. The plaintiffs in their petition furthermore alleged that no change of possession of the stock of goods followed the pretended transfer thereof, and that upon levies being made on said stock to satisfy the debts of the respective plaintiffs and other creditors of Sands, Ross Gamble had instituted some thirty or forty replevin suits by virtue of which he had gained and still held possession of goods which had been owned by Aaron Sands, and had been selling and disposing of the same, and for this purpose had replenished the stock as the requirements of trade demanded, and that by the means above indicated the Buffalo County National Bank and Ross Gamble had been paid a sum greatly in excess of that due

them, while the plaintiffs had been able to obtain nothing in satisfaction of the several amounts due them. The prayer of the petition in effect was that the transfer of the stock of goods from Aaron Sands to Ross Gamble might be declared fraudulent, that said Gamble might be required to account for the value of said stock and pay the judgments due plaintiffs; and to prevent a multiplicity of suits at law, and to save expense, that all the suits at law of said Gamble relating to said property and the proceeds thereof might be stayed until a full hearing could be had under the allegations of the petition, and for general equitable relief. The defendants answered separately, admitting such averments of the petition as were consistent with a *bona fide* transfer of the property to Gamble, and denying all such as were otherwise. On the trial of the issues there was a general finding in favor of the plaintiffs against the defendants, and accordingly a judgment was rendered against Ross Gamble in favor of the plaintiffs in gross in the sum of $16,945, to draw interest at seven per cent per annum. For the reversal of this judgment, which carries all the costs of the action, Ross Gamble has appealed to this court.

The district court found that the value of the property described in the bill of sale at the date of its execution, November 14, 1891, was $26,000, and that the aggregate amount of the sums due from Aaron Sands to the plaintiffs at the date of the decree, July 3, 1894, was $21,147.69. There was also a finding that Gamble, as part of the consideration for the transfer of the stock of goods to him, paid to the Buffalo County National Bank the sum of $10,100 as a *bona fide* debt at the time owing by Aaron Sands to said bank, and cancelled a *bona fide* debt at that time due from Sands to the bank of the amount of $663. As the interest on the amounts due from Sands to plaintiffs seems to have been included in the judgment against Gamble we cannot, without a full computation, make an exact comparison, but in general terms it will answer our purpose to say that the amount of that judgment,

$16,945, added to $10,100 and $663 paid and discharged by Gamble, is $27,708, while the finding of the value of the goods, as it was on November 19, 1891, was $26,000. These figures suggest the basis on which probably Gamble's liability was declared. In other words, he seems to have been charged with the value of the stock as it was on November 19, 1891, and credited what he had paid to the bank, and for the balance a judgment seems to have been rendered against him in favor of the plaintiffs in this case. At any rate we are relieved of considering any representations made to procure a credit to be extended to Aaron Sands, for the reason that the only letters introduced in evidence which had that tendency were written by the cashier of the Buffalo County National Bank, and not by Ross Gamble, and there is no pretense of any other representation. Since the finding was that there was due the Buffalo County National Bank the sum of $10,100 as a *bona fide* indebtedness, we are not required to review the evidence introduced on that proposition, for, of course, Ross Gamble, the sole appellant, does not question the correctness of this finding. It may be conceded, as claimed by the appellees, that as between the cousins, Aaron Sands and Allie Sands, a fictitious claim for clerk-hire due the latter from the former had been trumped up, and that the story of Allie Sands as to carrying in his inside vest pocket $6,500 in currency for a period of about six months was a pure fabrication, as was also the manner in which he testified he loaned it. This alone was not sufficient to justify the judgment which was rendered against Gamble, for it was requisite, to have this effect, that he should have obtained the goods with knowledge, actual or constructive, of the proposed fraud, or there must have been a want of consideration. (*Farrington v. Stone*, 35 Neb., 456; *Bank of Commerce v. Schlotfeldt*, 40 Neb., 212.) For the purpose of showing the facts tending to disclose a fraudulent purpose on the part of all parties concerned in the transfer to Ross Gamble, the plaintiffs called and used as their own witnesses the said Gamble, Aaron Sands,

and Allie Sands.   In *Blackwell v. Wright*, 27 Neb., 269, the principle was recognized that a person may not impeach the character of his own witness, and that having called him is equivalent to a recommendation that he is entitled to belief which cannot be contradicted.   The application of this rule eliminates from this case the attempts to show that transactions actually took place which Mr. Gamble denied, when the sole effect of the proposed proof was to show that Mr. Gamble was not worthy of belief. .

The special circumstances on which plaintiffs, in oral argument, seemed to rely as indicating a common corrupt purpose between Ross Gamble and the Sands were, the improbability that between the Sands there had been suffered to accumulate an indebtedness of $6,500 for clerk-hire alone, and the lack of likelihood that Gamble should have advanced by way of loans the several amounts which he testified as a witness that he had advanced.   Of these matters there was no attempt at contradiction.   The plaintiffs, then, are in this situation: They have furnished evidence of transactions so unusual in their nature that we are expected to reject this evidence as being false upon its face.   What now has been gained?   As we have already intimated, plaintiffs are in no position to impeach the witnesses for whose credibility they have vouched in a certain sense by offering them as witnesses.   No one has contradicted them, hence, if they are discredited, nothing has been gained by plaintiffs, because the ultimate inquiry in this case is not with reference to the truthfulness of these witnesses.   It may be possible that they cannot speak the truth, and yet evidence of that fact would not alone be sufficient to justify the inference that a transaction in which they were interested as parties was necessarily fraudulent as to creditors of one of them.   If the transaction testified to was so inherently improbable that we could not believe in its existence, we are simply brought to the point that with reference to the propositions to be established to entitle plaintiffs to a recovery there is no proof whatever.   If believed to any extent

the tendency of such belief is in that degree to disprove the very facts essential to the establishment of the claim made by the plaintiffs. A very careful consideration of the evidence with reference to the allowance of the clerk-hire and its payment by Gamble fails to impress us that he acted in bad faith with reference to this claim. It is true it was of a large amount, but both Aaron Sands and Allie Sands assured him that it was due and unpaid and that he could not get his claim paid without allowing it. He therefore accepted the concurrent statement of these parties, and, as we are satisfied from all the evidence, actually paid to Allie Sands $6,500. This payment is questioned; but in view of the fact that it was testified to, not only by the Sands and Ross Gamble, but as well by Albert T. Gamble, the cashier of the Buffalo County National Bank, as plaintiff's witness, and in view of the further fact that the check by which the payment was made was produced and identified by the said cashier as the check upon which such payment was made by him, we feel bound to assume that Allie Sands received this $6,500 as a payment made by Ross Gamble, in the absence of any evidence to the contrary, except such as shall now be described. To rebut the showing above noted the plaintiffs introduced in evidence a book of the Buffalo County National Bank showing its funds on hand before, on, and immediately following November 14, 1891. On each of these days the amount of currency was about $8,000. To show that the bank could not have made up for the payment of $6,500 by means of its deposits of November 14, 1891, the deposit slips of the bank for that day were offered in evidence. These were thirty-three in number. On the first of these there was an item, "checks, $1,810." If there was but one bank in Kearney it might be assumed that from this item the bank in question would probably have received no currency on that day. This assumption dissipates very much when it is remembered that the evidence shows the existence of three other banks, at least, at the time and place last indicated. Omitting mention

of all other of these slips, we need call attention to but
one of a deposit by Ross Gamble of $6,655 in currency.
Upon the inquiries of plaintiffs, Ross Gamble testified as
to the source from whence this money came, as he remem-
bered, the transaction, and we are convinced that his ex-
planation under the circumstances should be accepted as
satisfactory. The evidence with reference to the exist-
ence of a full consideration is equally convincing in its
nature. Ross Gamble introduced in evidence eight prom-
issory notes made to him by Aaron Sands between Sep-
tember 2, 1891, and October 26, 1891. These had been
stamped with the stamp of the above named bank as
"paid." Mr. Gamble also introduced his checks in favor
of Aaron Sands of dates between September 1, 1891, and
October 26, 1891, by means of which $11,306.32 above
loaned had been advanced to Sands. These checks were
in like manner stamped "paid." Mr. Gamble also testi-
fied as to the remaining advances being made in cash by
himself, and we find no reason for doubting his testimony
on this point, and it was uncontradicted. The district
court must have concluded that the transfer to Gamble
was fraudulent, and on that account must have disallowed
the claims for this money loaned, for, in view of the evi-
dence, there is no room for doubt that the money was
loaned by Gamble to Aaron Sands substantially as both
testified it was. These amounts, added to that paid by
Gamble to the bank, $10,100, and the $6,500 Allie Sands
was paid, more than equal $26,000—the value of the goods
at the date of the transfer as found by the district court.
It cannot, therefore, be open to question that the consid-
eration paid by Ross Gamble was fully equal to the value
of the goods for which the consideration was paid. As
regards Ross Gamble there was no ground in the evidence
for more than a mere suspicion of an improper motive,
and that is not sufficient to justify an adjudication that
the transfer to him was void. (*Bank of Commerce v. Schlot-
feldt*, 40 Neb., 212.)

As to whether or not Ross Gamble was aware that

Aaron Sands was indebted otherwise than to Mr. Gamble himself, or to the bank of which he was president, or to Allie Sands, plaintiffs were satisfied to rely solely upon the testimony of Mr. Gamble, called and examined as their own witness. His testimony was unequivocal that he knew of no indebtedness owing by said Sands, except as above indicated. This denial, therefore, cannot be accepted otherwise than as truthful. It has been held by this court that where a purchase of an entire stock of goods, books of account, and fixtures, was made from a merchant at a fair price and with no knowledge that such merchant was indebted to other parties, the purchase should not be declared void though the purpose of the purchaser was, in part, to secure payment of a debt due the bank of which he was at the time cashier. (*Goldsmith v. Erickson*, 48 Neb., 48.) Upon the proofs submitted to the district court we therefore conclude that the findings of that court above indicated were so unsupported by the evidence that they cannot stand. Accordingly its judgment must be, and is, reversed, and this cause is remanded for further proceedings.

REVERSED AND REMANDED.