PATTY GUYETTE, BY GEORGE H. GUYETTE, HER FATHER AND NEXT FRIEND, APPELLANT, v. WILLARD E. SCHMER, APPELLEE.

35 N. W. 2d 689

Filed January 21, 1949. No. 32503.

*Bertrand V. Tibbels,* for appellant.

*Mothersead & Wright* and *Robert G. Simmons, Jr.,* for appellee.

Heard before PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an action for damage suffered by a 13-year-old girl in a collision between a truck driven by the defendant and a saddle horse ridden by the girl. The trial court directed a verdict for the defendant at the close of plaintiff's case and the plaintiff appeals.

The evidence shows that on January 1, 1947, at or about 3:30 p. m., Patty Guyette was riding her horse in a southerly direction from the city of Mitchell on her way home. As she crossed the Mitchell bridge she

was riding at a gallop when she heard and observed the approach of defendant's truck from the rear. She immediately reined in her horse and had reduced its speed to a slow trot when the horse was struck from behind by the truck. Patty Guyette, whom we shall hereafter refer to as the plaintiff, was injured and the horse damaged to such an extent that it had to be destroyed.

Plaintiff testifies that she was riding on the right side of the bridge approximately 2 feet from the west railing. She says the horse was traveling straight south at a slow trot and that the horse did not shy or otherwise invade the highway on the left side of the center. Because of the nature of the injuries she sustained, plaintiff has no recollection of what occurred after the horse was struck by the truck.

The bridge is 675 feet long and 22 feet 4 inches wide. While the evidence varies, the accident occurred in the center or a little south of the center of the bridge. About 782 feet south of the south end of the bridge was an east and west road commonly referred to in the evidence as the river road. The evidence shows that at a point 225 feet west of the intersection of the river road with the north and south highway, and consequently about 1,150 feet southwest from the point of the accident, one Strong was driving east at the time of the collision. It is the effect of the testimony of Strong which largely influences the result of this appeal.

Strong testifies that when he was at the point above described, a point lower than the level of the bridge, he saw the truck strike the horse, it appearing to him that the horse was turning a somersault. He testifies that the horse was on the west side of the bridge when it was struck. He was unable to fix the speed at which the truck was traveling. Due to the fact that he killed his motor when he stopped at the stop sign on the river road and was unable to start it promptly, he did not

arrive at the scene of the accident until several minutes after it had occurred.

The evidence shows that the horse was badly injured, evidently paralyzed in the hind quarters. In its efforts to regain its feet the horse moved its front feet about, but was otherwise unable to move. The evidence most favorable to the plaintiff is that after the accident the rear of the horse was close to the west rail and that its head assumed various positions because of its efforts to rise. All the witnesses testify that there were no evidences of an open wound or bleeding on the horse. Blood stains were found on the west rail of the bridge and on the pavement within 2 feet of the west rail. The evidence shows that the injuries sustained by the girl resulted in considerable loss of blood.

Several witnesses, who were familiar with and had ridden the horse, testified that it was gentle, was not afraid of highway or street traffic, and had no habit of shying at objects on or along the road. There is a statement by one witness that the horse had a tendency when being reined in to swing his hind quarters to one side to the extent of a foot or so. ·

We think the evidence of the witness Strong was competent. The distance from which he viewed the accident and the fact that he was below the level of the bridge go to the credibility of the witness and the weight to be given his testimony. We do not concur with the contentions advanced by the defendant that objects the size of the truck and the horse described in this record could not be observed from a distance of 1,150 feet, or that under some circumstances a witness might not be able to determine their position on the road from that distance. It becomes a question for the jury to determine the weight to be given to it.

The plaintiff testifies that the horse was trotting south within 2 feet of the west rail of the bridge. Plaintiff had the same right to travel the highway as did the defendant. The defendant was bound to observe

plaintiff and her horse and to use ordinary care in the driving of the truck under the circumstances shown. He is bound to take into consideration the nature of the object he is passing on the highway and the common propensities of saddle horses in the exercise of the care which the law imposes upon him to exercise. There is evidence from which the jury could properly find that the horse was struck on the right side of the highway. We think the evidence in the record was sufficient to take the case to the jury, unless other points raised which will be hereinafter discussed call for a different conclusion.

The defendant contends that the trial court's action in directing a verdict is sustainable on the theory that a party is bound by the testimony of his own witness on the question of negligence. The record shows, in this respect, that plaintiff called one Hessler as a witness. Hessler was an occupant of the truck when the accident occurred. He testified on direct examination that plaintiff and the horse were both on the right side of the road immediately following the accident. He testified also that the blood stains were on and near the west rail of the bridge. These facts were, of course, circumstances tending to sustain plaintiff's case. On cross-examination he testified as to the manner in which the accident occurred, stating in substance that the horse was "on a walking trot and when we met it it just shied and hit the front right corner." He also testified that the truck was at all times on the left side of the highway while passing the horse and its rider. Plaintiff objected to this testimony on the ground that it was outside the purview of the direct examination. The trial court permitted the evidence to be elicited as a part of the cross-examination. We find no error in this. The extent of the cross-examination is largely discretionary with the trial court. The trial court must be allowed considerable leeway in the conduct of the trial and, unless a clear abuse of discretion is shown, this court

will not substitute its judgment for that of the trial court. DeVore v. Board of Equalization, 144 Neb. 351, 13 N. W. 2d 451; Gohlinghorst v. Ruess, 146 Neb. 470, 20 N. W. 2d 381. But the evidence elicited on cross-examination does not defeat plaintiff's case on the theory that a party is bound by the testimony of his own witness. It brings into operation the rule announced in Trask v. Klein, *ante* p. 316, 34 N. W. 2d 396, to the effect that where a plaintiff introduces evidence sufficient to prove all the material facts of his case, and also introduces a witness who contradicts some of the facts, the latter evidence will not sustain the direction of a verdict unless it is the only evidence produced on an issue necessary to the maintenance of the cause of action. See, also, Zimman v. Miller Hotel Co., 95 Neb. 809, 146 N. W. 1030.

There is a recognized distinction between impeaching one's own witness and contradicting evidence which he gives. The general rule is that one may not impeach a witness that he himself calls. "A person who calls a witness impliedly recommends him as worthy of belief, and afterwards cannot be permitted to introduce evidence which has no tendency other than to impeach such witness." Nathan v. Sands, 52 Neb. 660, 72 N. W. 1030. An exception has been provided to the foregoing rule in the following language: "Where one has been misled or entrapped into calling a witness by reason of such witness, previous to the trial, having made statements to the party, or his counsel, favorable to the party's contention, and at variance with the testimony given at the trial, and the party believed and relied upon such statements in calling the witness, and is surprised by the testimony on a material point, he may, in the discretion of the court, be permitted to show the contradictory statements made before the trial." Penhansky v. Drake Realty Construction Co., 109 Neb. 120, 190 N. W. 265. See, also, Moore v. State, 147 Neb. 390, 23 N. W. 2d 552.

The rule last cited, however, is not controlling in a case where a party contradicts evidence given by a witness called by him. In Krull v. Arman, 110 Neb. 70, 192 N. W. 961, this court said: "At the close of the testimony the appellant asked for a peremptory instruction on the claim that, because plaintiff called the defendant as a witness, and elicited testimony from him that deceased gave him the money, plaintiff is absolutely bound by his answers, and is estopped from setting up that they are either untrue or that the witness is not credible. * * * Contradiction, however, and impeachment are not synonymous. * * * While we refrain from expressing any opinion as to the sufficiency of the evidence, the defendant on that theory alone was not entitled to have the court assume as a matter of law that defendant's evidence could not be contradicted or overcome." The court in that case cites Thorp v. Leibrecht, 56 N. J. Eq. 499, 39 A. 361, wherein it is said: "While a plaintiff, who calls defendants as his witnesses, cannot impeach their character for veracity generally, he may show that the whole or any part of what they had sworn to is untrue, either by their own examination and the improbability of their own story or by other contradictory evidence material to the issue." This seems to be the general rule. See, 58 Am. Jur., Witnesses, § 797, p. 442; 70 C. J., Witnesses, § 1341, p. 1156; State v. Timm, 244 Wis. 508, 12 N. W. 2d 670; People v. Lee, 307 Mich. 743, 12 N. W. 2d 418; Tullis v. Tullis, 235 Iowa 428, 16 N. W. 2d 623.

The defendant urges that the evidence of Patty Guyette was discredited as a matter of law and cites Kipf v. Bitner, *ante* p. 155, 33 N. W. 2d 518; Gohlinghorst v. Ruess, *supra;* and other cases of similar import. The record dicloses that before the trial one of the attorneys for the defendant wrote out a statement reflecting the story of the accident as told by Patty Guyette, which she acknowledged to be correct in the presence of her attorney but which she did not sign. In a previous trial

of the case she admitted the truth of the statement which included a recitation to the effect that she did not remember the horse being hit or of falling from the horse. In the course of the present trial she testified that she remembered the truck striking the horse but had no recollection of what occurred thereafter. No other variance appears. This does not constitute such a change of position that the cited cases contemplate. The answer of the defendant admits that a collision occurred between the truck and the horse ridden by Patty Guyette. The change in testimony was on a wholly immaterial matter and can afford no basis for a holding that the change was made with a fraudulent motive for the purpose of circumventing objections made at a previous trial or to meet the exigencies of the case. Such inconsistencies of testimony are for the jury's consideration in determining the credibility of the witness and the weight to be given to her testimony.

The defendant contends that there is no proper bill of exceptions before the court and that the resulting presumption of the sufficiency of the evidence to sustain the judgment should be indulged and the judgment affirmed. The bill of exceptions contains the evidence of certain specified witnesses only in accordance with the provisions of section 25-1140.01, R. S. Supp., 1947. The applicable portion of this section provides: "The appellant may, in the alternative, request that the bill of exceptions include less than all of the evidence and if so, he shall be required, within three days after filing notice of appeal, to serve upon the adverse party or his attorney of record, and file with the clerk of the district court, (1) a designation of the witnesses whose testimony he deems essential, the exhibits and such trial proceedings as he desires to have included in the bill of exceptions, and (2) a statement of the errors he intends to rely upon for reversal or modification of the judgment or final order from which the appeal is taken. Within seven days after service of such designation, any

adverse party may serve upon the appellant, or his attorney of record, and file with the clerk of the district court, a designation of such additional witnesses whose testimony he deems essential, of the additional exhibits, and such other trial proceedings as he desires to have incorporated in the bill of exceptions."

The purpose of this statute was to provide a method for limiting the evidence contained in a bill of exceptions to that which was necessary to the consideration of the errors relied upon on appeal. Its purpose was to expedite appellate procedure and not to induce technicalities that would make it more hazardous. Consequently the statute should be liberally construed in order to attain the legislative intent.

The defendant urges that plaintiff did not comply with that part of the statute which requires the party appealing to serve and file a statement of the errors he intends to rely upon for a reversal or modification of the judgment or final order from which the appeal is taken. The plaintiff in the present case merely copied the grounds for reversal set forth in his motion for a new trial. The statute contemplates a more specific statement of the errors relied upon than are usually contained in a motion for a new trial. We think it means a statement of alleged errors such as is required to be set forth in an appellant's brief on appeal. In this respect the applicable statute, section 25-1919, R. S. 1943, and the rules and decisions of this court as well, require that the brief of appellant shall set out particularly each error asserted and intended to be urged on the appeal. It is important to an appellee that he be informed of the points to be relied upon where the bill of exceptions is not a complete transcript of the proceedings. Unless this provision is complied with he cannot determine whether or not all the evidence on the points to be raised on the appeal have been included. If the assignments are too general, the appellee may find it necessary as a matter of precaution to require a bill of

exceptions containing all the evidence at the trial. This would subject the appellant to the payment of the additional costs incurred because of his failure to particularly specify the errors relied upon on appeal, and cause him to lose the benefit of the alternative provisions of the statute. A judgment or final order will not, however, be affirmed on appeal for failure to particularly specify the errors relied upon unless prejudice to the opposing party has resulted therefrom. The remedy of an appellee, ordinarily, is contained in the statute, that is, to specify the additional evidence and exhibits to be included which he deems necessary to meet the errors as they are set forth. In the present case it is evident that no prejudice has resulted. The correctness of the court's ruling on the motion for a directed verdict was the primary question raised by the appeal. It is not even contended that any evidence bearing on that subject was not included in the bill of exceptions. The statement of errors required by the statute does assign the court's ruling on the motion for a directed verdict as an error to be relied upon. Under these circumstances, and in the absence of a showing of prejudice, we cannot say that no proper bill of exceptions has been presented in the present case.

A motion for a directed verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. The latter is entitled to have every controverted fact resolved in his favor and be given the benefit of every inference that can be reasonably deduced from the evidence. Applying this rule to the evidence at bar, we conclude that the trial court was in error in sustaining defendant's motion for a directed verdict.

REVERSED AND REMANDED.

PAINE, J., not participating.