LORINE DAVIS, APPELLANT, V. LLOYD DENNERT ET AL., APPELLEES.

75 N. W. 2d 112

Filed February 24, 1956. No. 33855.

66

*Lorna L. Williams* and *Wells, Martin, Lane, Baird & Pedersen,* for appellant.

*Gross, Welch, Vinardi & Kauffman,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Lorine Davis brought this action in the district court for Douglas County against Lloyd Dennert and Edwin Heidzig. The purpose of the action is to recover damages plaintiff alleged she suffered as a result of an automobile accident in which she was injured and her car damaged. Plaintiff bases her right to recover on the ground that defendant Heidzig negligently operated a car owned by defendant Dennert, which negligence she alleged caused the accident. Dennert filed an answer raising the issue of contributory negligence. He also filed a counterclaim whereby he sought to recover damages for personal injuries and damages to his car arising out of the same accident. Heidzig joined in the answer but filed a separate counterclaim seeking to recover damages for personal injuries he suffered in the same accident. Trial was had. At the conclusion of plaintiff's evidence, and after she had rested, defendants moved for a directed verdict. This motion the trial court sustained. The trial court thereupon dismissed plaintiff's cause of action and also the counterclaims of each of the defendants, the latter without prejudice. On November 3, 1952, plaintiff filed a motion for new trial which the trial court did not overrule until April 27, 1955. This appeal was perfected from that ruling.

The appeal primarily involves two questions. They are: First, did the appellant make a prima facie case? Second, if so, does the evidence she adduced show she was guilty of contributory negligence, as a matter of law, sufficient to defeat her right to recover?

The following principles are applicable in determining these questions:

"The rule is that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." Farr Co.

v. Union P. R. R. Co., 106 F. 2d 437. See, also, Fairmont Creamery Co. v. Thompson, 139 Neb. 677, 298 N. W. 551; Guerin v. Forburger, 161 Neb. 824, 74 N. W. 2d 870.

For the purpose of decision on a motion for directed verdict the motion must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom it is directed, and such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." Gable v. Pathfinder Irr. Dist., 159 Neb. 778, 68 N. W. 2d 500. See, also, Behrens v. Gottula, 160 Neb. 103, 69 N. W. 2d 384; Fick v. Herman, 159 Neb. 758, 68 N. W. 2d 622.

" 'In reviewing the action of a trial court in directing a verdict, this court will regard as conclusively established every fact favorable to the unsuccessful party which the evidence proves or tends to establish.' Preston v. Stover, 70 Neb. 632; Kepler v. Chicago, St. P., M. & O. R. Co., 111 Neb. 273. * * * 'Where, from the testimony before the jury, different minds might draw different conclusions, it is error to direct a verdict.' Suiter v. Park Nat. Bank, 35 Neb. 372; Schwerin v. Andersen, 107 Neb. 138." Bainter v. Appel, 124 Neb. 40, 245 N. W. 16.

"In an action where there is any evidence which will support a finding for a party having the burden of proof, the trial court cannot disregard it and direct a verdict against him." Parsons v. Cooperman, 161 Neb. 292, 73 N. W. 2d 235.

"Where different minds may reasonably draw different conclusions or inferences from the adduced evidence, or if there is a conflict in the evidence, as to whether or not the evidence establishes negligence or contributory negligence, and the degree thereof, when one is compared with the other, such issues must be submitted to a jury." Pierson v. Jensen, 150 Neb. 86, 33 N. W. 2d 462.

Dodge Street Highway is a paved four-lane highway running some 16 miles west from Omaha. There it ends in a Y, the north two lanes of the highway curving to the north and the south two lanes thereof curving to the south. Both curved roads then join a paved road running north and south between Waterloo, Nebraska, and Center Street. The accident here involved happened at about the southwest corner of this Y. It occurred approximately where the south curve of the Y, which is a sweeping curve some 3,000 feet in length, joins the north and south highway, which is a paved road 20 feet wide. It happened about 11:30 p. m. on Monday, July 3, 1950. The highway is level where it occurred and the view for drivers coming from any direction is substantially unobstructed. The night was clear and the pavement dry.

The cars involved were a 1939 Chevrolet sedan owned by appellant and, at the time, being driven by her, and a 1950 Ford coach owned by appellee Dennert and, with his consent, being driven by appellee Heidzig. Appellant, with her family, was traveling from Des Moines, Iowa, their home, to David City, Nebraska, to visit appellant's sister and her husband. Appellant, who was familiar with the road, had been driving for about 8 miles immediately preceding the accident. With her in the car at the time were her husband, Lester, who was in the front seat, and her two children, Madelon 16 and Jerry 11, who were in the back seat. Appellees were coming from Denver, Colorado, to Omaha, and had last stopped in Wahoo, Nebraska. With them in the car were Wilber Bohling, Paul Buntrock, and Doris Ails, the latter having joined them at Seward where she was attending school.

The impact was between the left front of the Chevrolet and the front of the Ford. After the accident both cars were on the north-south road facing west and about 4 feet apart. The front of the Chevrolet was off the paved surface and on the shoulder while the Ford

was entirely on the paved surface, the rear being across the center line. Both cars were badly damaged and the passengers therein injured in various degrees.

The foregoing is only a general summary of when, where, and how the accident happened. We shall discuss the evidence more in detail as we deal with the questions raised.

There are several other questions raised besides the two principal issues. We shall discuss and dispose of them first because a determination thereof is, to a certain extent, determinative of the principal issues.

Appellant, in her brief, says: "There were a number of erroneous rulings on evidence. We assume that this Court in determining whether it was proper for the trial court to direct a verdict will only consider such evidence as was properly admitted and will also consider evidence which was wrongfully excluded if proper tender of proof made. Hence, we will not make a separate examination of the Court's rulings * * *."

The rule, in this regard, is as follows:

"In order that assignments of error as to the admission or rejection of evidence may be considered, the rules of court require that appropriate reference be made to the specific evidence against which objection is urged." Joiner v. Pound, 149 Neb. 321, 31 N. W. 2d 100.

"An assignment that evidence was on the trial erroneously admitted or rejected, to be considered on appeal, must specifically point out the evidence." Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913.

Rulings of the court in this regard are therefore not properly here for our consideration. It is true we have held that: "Under the rules of this court the consideration of a cause will be limited to errors assigned and discussed, subject however to the further rule that the court may at its option notice a plain error not assigned." Nowka v. Nowka, 157 Neb. 57, 58 N. W. 2d 600. We find

nothing in this case that would cause us to exercise this option.

Appellant suggests the following principle has application here: " 'As a general rule it is negligence as a matter of law for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps.' (Roth v. Blomquist, 117 Neb. 444, 220 N. W. 572.)" Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106.

But, as stated in Bainter v. Appel, *supra*: "This court has properly applied the rule quoted in cases where the collision was between a moving automobile and an object which relative to the automobile was stationary. Roth v. Blomquist, 117 Neb. 444. But to apply it to approaching automobiles colliding with each other would violate the very reason by which the rule is supported."

This principle has no application to automobiles approaching each other. That would be particularly true because: "A user of the highways may assume, unless and until he has warning, notice, or knowledge to the contrary, that other users of the highways will use them in a lawful manner, and until he has such warning, notice, or knowledge, he is entitled to govern his actions in accord with such assumption." Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612.

Appellant called appellee Heidzig as a witness. He placed appellant's automobile astraddle the center line of the curve just before the accident occurred and testified his car was still in the right-hand lane for travel when the impact occurred. Appellees contend appellant is bound by this testimony. The correct rule in this regard is fully discussed in Krull v. Arman, 110 Neb. 70, 192 N. W. 961, as follows: "At the close of the testimony the appellant asked for a peremptory instruction on the claim that, because plaintiff called the defendant as a witness, and elicited testimony from him that deceased gave him the money, plaintiff is abso-

lutely bound by his answers, and is estopped from setting up that they are either untrue or that the witness is not credible. Appellant cites Nathan v. Sands, 52 Neb. 660. This case states the correct rule, and evidence tending only to impeach such witness is not admissible. Contradiction, however, and impeachment are not synonymous. The distinction is pointed out in De Noyelles v. Delaware Ins. Co., 138 N. Y. Supp. 855, quoted in 2 Words and Phrases, Second Series, under 'Impeachment:' 'A party may contradict his own witness, for contradiction is not impeachment, as impeaching evidence is that which is directed solely to the question of the credibility of the witness.' See, also, 40 Cyc. 2561; Dravo v. Fabel, 132 U. S. 487; Thorp v. Leibrecht, 56 N. J. Eq. 499. In this last case Mr. Justice Pitney announces what appears to be a fair and comprehensive rule, as follows: 'While a plaintiff who calls defendants as his witnesses cannot impeach their character for veracity generally, he may show that the whole or any part of what they had sworn to is untrue either by their own examination and the improbability of their own story or by other contradictory evidence material to the case.' "

As stated in Trask v. Klein, 150 Neb. 316, 34 N. W. 2d 396: "As a general rule a party calling a witness vouches for his credibility and is ordinarily bound by any evidence he gives which is not contradicted or shown to be unreliable. In other words, a party who offers the evidence of a witness cannot subsequently object that it should not have been received or that it is insufficient to sustain a judgment based thereon. But a party calling a witness is not necessarily bound by his testimony. This is true where the testimony is contradicted, either expressly or by inference, by evidence that would justify the trier of facts in arriving at a different conclusion."

And in Guyette v. Schmer, 150 Neb. 659, 35 N. W. 2d 689, we said: "But the evidence elicited on cross-

examination does not defeat plaintiff's case on the theory that a party is bound by the testimony of his own witness. It brings into operation the rule announced in Trask v. Klein, ante p. 316, 34 N. W. 2d 396, to the effect that where a plaintiff introduces evidence sufficient to prove all the material facts of his case, and also introduces a witness who contradicts some of the facts, the latter evidence will not sustain the direction of a verdict unless it is the only evidence produced on an issue necessary to the maintenance of the cause of action. See, also, Zimman v. Miller Hotel Co., 95 Neb. 809, 146 N. W. 1030." See, also, Ross v. Carroll, 138 Neb. 1, 291 N. W. 726; Gutoski v. Herman, 147 Neb. 1001, 25 N. W. 2d 902.

We come then to the rule as it relates to circumstantial evidence as appellant's case, to a large extent, depends thereon. We have said in this regard: "All that plaintiff was required to do was to establish, to a reasonable probability, that the accident happened in the manner alleged in his petition, and where facts and circumstances are established from which the way the accident happened could be logically inferred, it was not error to submit that issue to the jury." Markussen v. Mengedoht, 132 Neb. 472, 272 N. W. 241. See, also, Taylor v. J. M. McDonald Co., 156 Neb. 437, 56 N. W. 2d 610.

"Negligence is a question of fact and may be proved by circumstantial evidence and physical facts. All that the law requires is that the facts and circumstances proved, together with the inferences that may be properly drawn therefrom, shall indicate with reasonable certainty the negligent act charged." Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701.

However, as early as Blid v. Chicago & N. W. Ry. Co., 89 Neb. 689, 131 N. W. 1027, we held: "Circumstantial evidence may be received to establish a fact in contradiction to the positive testimony of alleged eye-witnesses to the transaction; but circumstantial evidence cannot be said to be sufficient to sustain a verdict depending

solely thereon for support, unless the circumstances proved by the evidence are of such a nature and so related to each other that the conclusion reached is the only one that can fairly and reasonably be drawn therefrom. Asbach v. Chicago, B. & Q. R. Co., 74 Ia. 248; Lopez v. Campbell, 163 N. Y. 340; American Freehold Land Mortgage Co. v. Whaley, 63 Fed. 743."

In support of this holding we cited Asbach v. Chicago, B. & Q. Ry. Co., 74 Iowa 248, 37 N. W. 182. However, since that time Iowa has materially modified this principle. See Boles v. Hotel Maytag Co., 218 Iowa 306, 253 N. W. 515; Whetstine v. Moravec, 228 Iowa 352, 291 N. W. 425; Hayes v. Stunkard, 233 Iowa 582, 10 N. W. 2d 19. As stated in Boles v. Hotel Maytag Co., *supra*: "A person is not required to prove his theory of negligence by testimony so clear as to exclude every other possible theory."

We have followed the principle announced in Blid v. Chicago & N. W. Ry. Co., *supra,* on numerous occasions, as recently as Shamblen v. Great Lakes Pipe Line Co., 158 Neb. 752, 64 N. W. 2d 728.

On the other hand, in Rocha v. Payne, 108 Neb. 246, 187 N. W. 804, we held: "Negligence is a question of fact and may be proved by circumstantial evidence. All that the law requires is that the facts and circumstances proved, together with the inferences that may be legitimately drawn from them, shall indicate, with reasonable certainty, the negligent act complained of."

Since the announcement thereof we have frequently followed this rule, doing so as recently as Griess v. Borchers, 161 Neb. 217, 72 N. W. 2d 820. That other courts are divided on this question see 20 Am. Jur., Evidence, § 1189, p. 1043, and 32 C. J. S., Evidence, § 1039, p. 1102.

We think the following discussion from Duncan v. Fort Dodge Gas & Electric Co., 193 Iowa 1127, 188 N. W. 865, apropos here: "Appellant makes the point that, to sustain plaintiff's charge of negligence by circumstantial evidence, the circumstances shown must be such as

are wholly inconsistent with any other reasonable theory of the death of the deceased. It may be admitted that cases are to be found, and possibly some of our own, in which the rule is stated as quoted by counsel. It is, nevertheless, a misleading statement, as applied to disputed facts in a civil action. In its broadest sense, it has no proper application except in criminal cases where the evidence relied upon to establish the alleged crime is purely circumstantial."

In Schoepper v. Hancock Chemical Co., 113 Mich. 582, 71 N. W. 1081, the court said: "Defendant's counsel contend that the cause of this explosion is a matter of mere conjecture, and it is said by counsel that it is not enough for plaintiff to prove circumstances consistent with her theory, but that these circumstances, and each of them, must preclude any other rational conclusion. This we take to be but another way of stating the proposition that the proof must exclude all reasonable doubt. It is hardly necessary to say that no such rule obtains in civil cases."

We think the rule as announced in Blid v. Chicago & N. W. Ry. Co., supra, should only have application in criminal cases where the proof of guilt must be established beyond a reasonable doubt while the rule announced in Rocha v. Payne, supra, has application in civil cases where all that is required of plaintiff is to establish his cause of action by a preponderance of the evidence.

Because of the nature of the evidence adduced, and hereinafter set out, we set forth the following as having application thereto:

"A witness may describe the marks that he observed near the place of an accident. The inference to be drawn from the testimony regarding such tire marks or scratches is solely the province of the jury." Danner v. Walters, 154 Neb. 506, 48 N. W. 2d 635.

"The lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further

test of whether the speed was greater than was reasonable and prudent under the conditions then existing." Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569. See, also, Griess v. Borchers, *supra.*

. "What is a reasonable speed is necessarily largely dependent on the situation and the surrounding circumstances, it being obvious that a speed which would be safe, reasonable, and proper in some places and under some circumstances might be highly dangerous, unreasonable, and improper in other places and under other circumstances." Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499. See, also, Granger v. Byrne, 160 Neb. 10, 69 N. W. 2d 293.

"The violation of an ordinance or statute requiring automobiles and other vehicles to drive to the right of the center of the highway does not constitute negligence per se, or as a matter of law; but whether or not such violation constituted negligence is a question for the jury under proper instructions." Burkamp v. Roberts Sanitary Dairy, 117 Neb. 60, 219 N. W. 805. See, also, Herman v. Firestine, 146 Neb. 730, 21 N. W. 2d 444.

"Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the accident could not have happened." Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825. See, also, Bixby v. Ayers, 139 Neb. 652, 298 N. W. 533.

Appellant testified she entered the curve and, after doing so, dimmed her lights and continued to drive on the right side of the center line. However, she said her memory as to the accident itself was a blank, her first knowledge thereof being after she regained consciousness in the hospital. Appellant then produced several witnesses who testified to debris and a swirl mark on the pavement at a point 5 feet 10 inches to the northwest of the center line for cars traveling from the east and turning on this curve to go south, that is,

5 feet 10 inches over in the normal traveling lane for appellant's car. The debris consisted of dirt, oil, potato salad, etc. The evidence shows that appellant's daughter had prepared and they were carrying a picnic lunch in appellant's car which included potato salad. The swirl mark is referred to as a tire swirl or a mark apparently made by a tire or some substance of the same consistency as a tire. It was also described as dark in color but gradually shading off to a lighter color, as having the appearance of scuffing by a tire on the pavement, and as a black mark that was 4 by 6 inches in size. The evidence shows the left front wheel of the Chevrolet was damaged and the tire thereon as being blown out. In fact it was the only tire on either car that was down. The mark was to the east of where the cars finally came to a stop and on a line about equal distance between them, the cars being 4 feet apart. In fact appellee Heidzig places the point of impact at about the center of the pavement, which was 31 feet wide at this point, and thus only 4 inches from where the other witnesses placed the mark they observed on the pavement.

Appellant called appellee Heidzig to the stand and he testified he had never traveled this road before; that immediately before the accident he had been traveling in excess of 50 miles an hour; that he had noticed a curve sign so had slowed down for it; that there was nothing for some distance to obstruct his view; that he first noticed appellant's car as it was coming around the curve from the east; that he did not pay particular attention to it; that he was driving with his bright lights on; that he did not look to the right or east again but only watched the road ahead; that he next observed appellant's car just seconds before the collision; that when he saw appellant's car it was very close; that when he saw appellant's car he was traveling about 50 miles an hour; that appellant's car was then astraddle the center line, both front and rear left wheels being to the east or in

his lane for travel; that he removed his foot from the accelerator but did not have sufficient time to put it on his brakes; that as he took his foot off his accelerator he also turned his steering wheel to the left and his car swung to the left; that about the same time he turned his car to the west (left) the driver of appellant's car did the same, or to her right; that the impact between the two cars occurred about the center as far as feet from either side of the pavement was concerned; that the left front fender of appellant's car came in contact with the middle of the car he was driving; that his car did not travel forward after the impact; that both cars bounced across the highway to the west; and that after the collision both cars stopped facing west.

It should here be stated that all traveling lanes were 10 feet wide and the shoulder to the right was 8 feet wide, thus giving the appellee Heidzig plenty of room to turn to the right had he observed appellant's car in time to have done so.

From what we have set forth we think the evidence is sufficient to submit to a jury the question of whether or not appellees were guilty of any one or more of the following alleged acts of negligence as claimed by appellant: That appellee Heidzig was driving at a rate of speed greater than was reasonable and prudent under the conditions then existing; that he failed to keep a proper lookout; that, after seeing appellant's car, he failed to turn to the right and keep in his own lane of travel; and that he left his own lane of travel and crossed over into appellant's lane for travel.

We come then to the question, could the facts bring the appellee within the doctrine of a sudden emergency? This doctrine is stated as follows: "* * * where one is confronted suddenly with an emergency and is required to act quickly, he is not necessarily negligent if he pursues a course which mature reflection or deliberate judgment might prove to be wrong. The law does not require under such circumstances that no mistake should

be made. All it requires is that one demean himself as an ordinary, careful and prudent person would have done, under like circumstances, and if he does that, he is not held to be negligent, even though he committed an error in judgment." Belik v. Warsocki, 126 Neb. 560, 253 N. W. 689.

However, as stated in Roby v. Auker, 149 Neb. 734, 32 N. W. 2d 491: "The emergency rule cannot be successfully invoked by either party in a negligence case unless there is competent evidence to support a conclusion that a sudden emergency actually existed, and then it cannot be successfully invoked by one who has brought that emergency upon himself by his own acts or who has not used due care to avoid it."

We think the facts herein set out as testified to by appellee Heidzig clearly brings him within the latter part of this rule. By this we do not mean to say his testimony as to where appellant was driving her car is without effect. If believed by a jury it presented a violation of certain statutes regulating the operation of cars on the public highway and was, therefore, evidence of negligence by appellant to be considered by the jury on the issue of contributory negligence. It would not, however, be such as a matter of law sufficient to defeat any right to recover she might otherwise have.

We have come to the conclusion that the judgment of the trial court denying appellant's motion for a new trial was in error. We therefore reverse its judgment doing so and remand the cause with directions that appellant's motion for a new trial be sustained.

REVERSED AND REMANDED WITH DIRECTIONS.

CARTER, J., participating on briefs.