GEORGE BACKER ET AL., APPELLANTS, V. CITY OF SIDNEY, NEBRASKA, APPELLEE.

87 N. W. 2d 610

Filed January 17, 1958. No. 34268.

*Holtorf & Hansen* and *Thorpe & Babcock,* for appellants.

*Clinton & McNish,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by George Backer and Mollie Backer, as plaintiffs, in the district court for Cheyenne County, against the City of Sidney, defendant, to recover consequential damages to real estate owned by the plaintiffs abutting on an underpass constructed by the defendant. Trial was had to a jury resulting in a verdict for the defendant. The plaintiffs filed a motion for new trial which was overruled. From the order overruling the motion for new trial, the plaintiffs appeal.

The plaintiffs' petition, insofar as it need be considered here, alleged that the City of Sidney is a city of the first class located in Cheyenne County; that the city constructed an underpass under the Union Pacific railroad tracks on Thirteenth Avenue where the same intersects the Union Pacific railroad tracks, which construction was commenced on March 26, 1956; that the plaintiffs own real estate, Lots 5 and 6, Block 10, original town of Sidney, which abuts on the east side of Thirteenth Avenue and the underpass; that the construction of the underpass and approach thereto will damage and destroy the value of the plaintiffs' property which, but for such construction, would be desirable for commercial and other purposes; and that the defendant city is invested with the right of eminent domain but

has neither compensated nor agreed to compensate the plaintiffs for the damages which they will suffer by virtue of the construction of the underpass. The plaintiffs prayed for damages and interest from March 26, 1956.

The defendant's answer admitted certain paragraphs of the plaintiffs' petition relating to procedure for the construction of the underpass, and denied generally all other allegations therein contained with reference to damages that might be suffered by the plaintiffs. The answer further alleged, as a defense, that the property of the plaintiffs had been specially benefited by the construction of the underpass and the value of their property enhanced, and prayed that the plaintiffs' petition be dismissed.

The plaintiffs' reply to the defendant's answer denied that the construction of the underpass benefited the plaintiffs' property, and alleged that any benefits accruing to the plaintiffs were benefits accruing to the public as a whole. They further alleged that the building of the underpass and the appurtenances thereto, including a one-way access road immediately to the west of their property, reduced the market value of the property by injuring it for public use; that because of the construction of the underpass the plaintiffs' property was damaged; and that these damages are not common to the public generally. The plaintiffs renewed the prayer of their petition.

The defendant complains that the plaintiffs' assignments of error are wholly insufficient and present no question for review by this court, except at its option. The defendant argues that the plaintiffs' assignments of error are set forth only in the language of the statute pertaining to motions for new trial. The plaintiffs' assignments of error Nos. 1, 3, 4, 5, and 6 are substantially in the language contained in section 25-1142, R. R. S. 1943, relating to motions for new trial. Assignment of error No. 2, not complained of by the defendant, falls within

the same category as assignment of error No. 3, that the evidence is not sufficient to sustain the verdict.

Section 25-1919, R. R. S. 1943, provides in part: "The brief of appellant shall set out particularly each error asserted and intended to be urged for the reversal, vacation or modification of the judgment, decree or final order alleged to be erroneous; * * *. The Supreme Court may, however, at its option, consider a plain error not specified in appellant's brief." See, also, Rule 8a2 (4), Revised Rules of the Supreme Court, 1957.

As stated in Smallcomb v. Smallcomb, *ante* p. 191, 84 N. W. 2d 217: "The function of assignments of error is that they set out the issues presented on appeal. They serve to advise the appellee of the questions submitted for determination in order that the appellee may know what contentions must be met. They also advise this court of the issues which are submitted for decision."

In Wieck v. Blessin, *ante* p. 282, 85 N. W. 2d 628, quoting from Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112, it is said: " 'In order that assignments of error as to the admission or rejection of evidence may be considered, the holdings of this court require that appropriate reference be made to the specific evidence against which objection is urged.' See, also, Joiner v. Pound, 149 Neb. 321, 31 N. W. 2d 100; Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913."

In the instant case the plaintiffs predicated error on certain instructions wherein the issue of special benefits was submitted to the jury. The above authorities do not preclude this court from examining the evidence to determine whether or not the trial court committed prejudicial error in submitting the issue of special benefits to the jury.

It is apparent from the verdict of the jury that the jury must have considered that there were special benefits due to the construction of the public improvement which enhanced the value of the plaintiffs' property and

as a consequence the plaintiffs suffered no injury or damage to their property.

"In cases arising under the exercise of the right of eminent domain, benefits are usually divided into but two classes, general and special, the general benefits as a rule being those derived by the community from the use of the improvement, and special benefits being those derived by particular pieces of property because of their advantageous relation to the improvement, and differing in kind rather than merely in degree from the general benefits." 18 Am. Jur., Eminent Domain, § 298, p. 943.

In Prudential Ins. Co. v. Central Nebraska Public Power & Irr. Dist., 139 Neb. 114, 296 N. W. 752, 145 A. L. R. 1, we said: "The difficulty in applying many of the rules comes from the use of the words 'general public,' 'community at large,' and other similar expressions in the texts and cases defining general benefits. * * * 'Few general rules can be laid down for ascertaining whether or not a given benefit is general or special; the question must be determined largely by the circumstances of the particular case.'" The court further said: "In discussing why general benefits are not deducted from consequential damages (3 Sedgwick, Damages (9th ed.) 2299) the author points out that the landowner is given damages for the taking or injury of his property. 'But the taking or injury does not of itself produce these advantages, because they are in general *shared equally by those in the neighborhood whose land is neither injured nor taken.*' * * * Why are special benefits deducted? The authorities clearly establish that one of the reasons is that those benefits are a *kind* of benefit that has been brought to and affect the particular piece of land that is not shared in by all other land within the range of the public improvement and that the landowner should pay, by a reduction in his damages, for that special benefit. 18 Am. Jur. 942, sec. 298; 2 Nichols, Eminent Domain (2d ed.) 767; * * *. 'In order that

benefits may be set off against the * * * damage to that injured in making an improvement * * * they must be special or local or such as result directly and peculiarly to the particular tract of which a part is taken.' 20 C. J. 822."

We summarize only the evidence deemed necessary to determine whether or not any special benefits accrued to the plaintiffs' property by virtue of the construction of the public improvement.

The record discloses that the plaintiff, George Backer, purchased Lots 5 and 6, Block 10, original town of Sidney, on November 4, 1950, for $2,000, taking title in his name and in his wife's name as joint tenants. These lots are 48 feet wide facing south on Grant Street, with the west side of 132 feet abutting on Thirteenth Avenue. The city of Sidney commenced construction of an underpass under the Union Pacific railroad tracks on Thirteenth Avenue on March 26, 1956, which was completed at the time of trial. The north end of the approach to the underpass ends at an alley which is along the north side of the plaintiffs' lots, with the entrance of an access road north of the alley. The south end of this construction terminates on the other side of the railroad tracks from the plaintiffs' lots. The paving on the one-way access road is immediately to the east of the underpass.

The plaintiff George Backer testified that at the time he purchased the lots he made observation and study to the effect that there was considerable traffic that passed this property, and he concluded that it would be a good location for a filling station. He further testified that due to the construction of the underpass this property was valueless for such purpose; that no business places were located in the immediate vicinity; that he could not rent the property and it was of no value to him; and that immediately before the construction of the underpass the market value of this property was $7,000 and

immediately after the completion of the underpass the value of this property was $100.

A real estate broker, also experienced in the oil business, testified that he was familiar with the plaintiffs' property; that just prior to the time of the commencement of the construction of the underpass plaintiffs' lots constituted a suitable location for a filling station and were of the value of between $5,500 and $6,000; that immediately after the construction of the underpass this property had no value for such purpose; that after the construction of the underpass plaintiffs' property had no value for either commercial or residential purposes; and that property values in Sidney had increased in the past few years. He further testified that an access road and 15 feet of paving on the west edge of the plaintiffs' property was a detriment to the property due to the manner of ingress and egress to it; that north of the plaintiffs' property is a sign which reads "Do Not Enter," the effect of which prohibits traffic from coming onto the plaintiffs' property; that the only way that entrance can be gained thereto would be from the east; and that the property is so situated that the construction of the underpass prohibits the flow of traffic passing the property to have adequate means to enter thereon.

A real estate dealer in Sidney testified that she had been in the business of selling real estate since 1950; that she sold both commercial and residential property; that she was familiar with the plaintiffs' property prior to the building of the underpass and with the zoning plans and ordinances of the city with reference to real estate; that the plaintiffs' property, by ordinance, is in a restricted building area and zoned so as to permit the construction and use of the property for a filling station; that prior to the construction of the underpass there was considerable traffic on the street passing the plaintiffs' property and it was ideal for any type of business such as a drive-in, flower shop, or filling station, it being convenient and not too far from the business

section of the city; and that the property could not be used for such business purposes after the construction of the underpass because it was completely shut off from traffic and the only means of access to it was to completely circle the block. She further testified that immediately before the construction of the underpass the market value of the property was $5,000, and after the construction of the underpass the property had very little value. This witness further testified that the plaintiffs' lots would be undesirable for a residence because of the inconvenience of the location.

A witness engaged in the mortgage and loan business and the construction of residences, and who was also a real estate broker, testified for the defendant that he was employed by the city to make an appraisal of the property abutting on Thirteenth Avenue in connection with the construction of the underpass under the Union Pacific railroad tracks; that he made an appraisal of Lots 5 and 6, Block 10, of the original town, for the purpose of determining the value of the property immediately prior to the construction of the underpass and immediately after the construction of the underpass; and that he inspected the plaintiffs' property before and immediately after the construction of the underpass and was familiar with the neighborhood in which the plaintiffs' property is located. He further testified that before the construction of the underpass the market value of the plaintiffs' property was $1,000 to $2,000, and immediately after the construction of the underpass it had the same value. He further testified that there were certain special benefits, such as a new sidewalk constructed along the west edge of the property, the paving immediately adjacent to the property, and the drainage which eliminated flood conditions that existed on the property prior to the construction of the underpass; and that several times during his residence in Sidney, since 1933, when they had heavy rain the floodwaters came down Thirteenth Avenue and blocked the

crossing temporarily, and Thirteenth Avenue remained in a bad condition for as much as 2 or 3 days. He estimated that the property had been specially benefited by the improvement, as distinguished from benefits to property generally, in the amount of $600 to $700. He further testified that there had been very little change in the real estate market values of property similar to the plaintiffs' property north of the Union Pacific railroad tracks in Sidney from November 1950, to the completion of the underpass.

On cross-examination this witness testified that prior to the construction of the underpass there were two north-south crossings across the Union Pacific right-of-way, one on Thirteenth Avenue and one on Tenth Avenue near the depot. Since the completion of the underpass, the access road on the west side of the plaintiffs' property had been paved. This is a one-way street and cannot be entered from the north side. Traffic would have to go around three sides of the block to get to the plaintiffs' property. If the traffic went out on the west side of the plaintiffs' property, it would be required to go north and not make a turn at the underpass, but would have to circle some other block. For commercial purposes such as a filling station, drive-in, or flower shop, traffic is of considerable value. Prior to the building of the underpass, considerable traffic passed the plaintiffs' property. By the construction of the underpass, as far as commercial enterprises that depend upon traffic are concerned, the plaintiffs' property is almost useless. With reference to special benefits to which he testified, it is true that the property owner would have to be able to use the paving and other such benefits to have them benefit the property.

The street commissioner of the city of Sidney, whose duty it is to look after the streets, alleys, and storm sewers, testified that he was familiar with the location of Thirteenth Avenue and Grant Street and the property in that vicinity; and that when there is a heavy

rain from the northwest there is a flood on Thirteenth, Twelfth, and Eleventh Avenues. The waters from the northwest come down from Nineteenth and Twentieth Streets into a pocket. Prior to the construction of the underpass, in a hard rain the water would pile up on Thirteenth Avenue and back up to the north three-fourths of a block. This would occur on an average of twice a year. Prior to the construction of the underpass, Thirteenth Avenue between Forrest and Grant Streets was unpaved and there was no paving at the intersection of Grant Street and Thirteenth Avenue until the underpass was constructed. He testified that he did not believe there had been a flood at Thirteenth Avenue and Grant Street since the construction of the underpass. In connection with the construction of the underpass, provision was made for drainage at this corner. A catch basin was installed on the east side of the street which connects to the sewer which runs north to Forrest Street and through a big sewer that goes east from Forrest Street.

On cross-examination, the effect of the testimony of this witness was that the drainage of the water in this vicinity not only affected the property of the plaintiffs, but other properties in the immediate vicinity by its natural flow from north to south. He further testified that prior to the building of the underpass Thirteenth Avenue and Tenth Avenue were open to the public from the south side of the right-of-way to the north side, were heavily traveled, and there was considerable traffic across the railroad tracks on Thirteenth Avenue.

The deposition of a civil engineer was read into evidence. He testified that he inspected the paving on Thirteenth Avenue abutting on the plaintiffs' property, Lot 5, Block 10, in connection with the construction of the underpass on Thirteenth Avenue between Illinois and Forrest Streets. The paving, as it relates to the plaintiffs' property, is along the west side of such prop-

erty with an 8-inch curb, 15 feet of paving, and a concrete sidewalk. He further testified that the plaintiffs' property is benefited in the sum of $755 due to the fact that it has been improved by the sidewalk and the paving. He also testified that he inspected the plaintiffs' property before the underpass was constructed. Prior to the paving, the road was dusty and subject to flooding at the corner upon which the plaintiffs' property was located. At the present time it is an all-weather road and plaintiffs' property derived a special benefit by the construction of the underpass.

An appraiser of real estate employed by the city of Sidney to make an appraisal of properties abutting Thirteenth Avenue in connection with the construction of the underpass under the Union Pacific railroad tracks made an appraisal of the plaintiffs' property to obtain an opinion of the fair market value of this property as it was prior to the construction of the underpass and the fair market value after the completion of the underpass. He testified that the best use of this particular property would be primarily for warehouse purposes or something of that nature, and secondarily for residential purposes. In his opinion the fair market value of the property immediately before the construction of the underpass would be $2,000, and its value immediately after the construction of the underpass was $2,000.

The evidence shows that after the construction of the underpass those desiring to obtain access to the plaintiffs' property are required to circle the block. This inconvenience and annoyance, as it relates to the use to which the plaintiffs' property may be put under the restricted zoning which affects it, constitutes a detriment to the property. The concrete sidewalk, 8-inch curb, and the 15-foot paving along the west side of the plaintiffs' property on a one-way access road are of no special benefit to the plaintiffs. It appears to be practically impossbile for the plaintiffs to have any access by vehicle to the west side of their lot.

The testimony relating to drainage discloses that prior to the construction of the underpass during a heavy rain, especially from the northwest, flood conditions did exist at Thirteenth, Eleventh, and Twelfth Avenues, and at Thirteenth Avenue and Grant Street where the plaintiffs' property is located water would accumulate and back up three-fourths of a block to the north. This water would remain at this crossing for a period of 2 or 3 hours. The construction of the underpass had the effect of eliminating this flooding condition. Provision was made for drainage of this corner on the east side of the street by building a catch basin which connects with a sewer which runs north to Forrest Street and to a large sewer which runs east from that street. This is not a special benefit to the plaintiffs' property but a general benefit shared equally by those in the neighborhood whose property is neither injured nor taken.

We conclude that the evidence fails to show any special benefits accruing to the plaintiffs' property by virtue of the construction of the underpass, and the trial court committed prejudicial error in submitting the issue of special benefits to the jury. Having arrived at this conclusion, there is no occasion to discuss the defendant's cross-appeal.

For the reasons given herein, the judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.